IN RE MEGAN M.*
(8847)

DUPONT, C. J., NORCOTT and LANDAU, Js.

Argued December 14, 1990—decision released April 2, 1991

*Philip W. Ball,* for the appellant (respondent mother).

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 2026, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Paul J. Bakulski* assistant attorney general, with whom, on the brief was *Susan T. Pearlman,* assistant attorney general, for the appellee (petitioner).

*Lynn Jenkins,* for the minor child.

LANDAU, J. The respondent mother[1] appeals from a judgment terminating her parental rights with respect to her minor daughter, Megan, pursuant to a petition filed by the department of children and youth services (DCYS) in accordance with General Statutes § 17-43a (b) (4) (now § 17a-112 [b] [4]).[2]

The respondent claims that the trial court improperly found that no ongoing parent-child relationship existed. The respondent's underlying contention is that two findings are not supported by the evidence. The findings are that DCYS provided Megan with counseling for reunification and that DCYS did not prevent the respondent from maintaining a meaningful relationship with Megan. The sole issue on appeal, therefore, is whether the trial court's conclusion that no ongoing relationship existed is supported by the evidence.

Megan was born on July 23, 1982, and has been in foster care with the same foster family since August, 1984. In November, 1984, the court determined that she was neglected by her natural parents and committed Megan to the care and custody of the commissioner of DCYS.

" 'The termination of parental rights is defined as "the complete severance by court order of the legal relationship, with all its rights and responsibilities, between the child and [her] parent . . . ." General Statutes § 45-61b (g). It is "a most serious and sensitive

---

[1] The father does not appeal the termination of his parental rights.

[2] The termination petition also contained allegations under General Statutes § 17-43a (b) (3) (now § 17a-112 [b] [3]). The trial court found, however, that the petitioner failed to meet its burden of proof regarding these allegations.

judicial action." *Anonymous* v. *Norton,* 168 Conn. 421, 430, 362 A.2d 532, cert. denied, 423 U.S. 935, 96 S. Ct. 294, 46 L. Ed. 2d 268 (1975). "Although that ultimate interference by the state in the parent-child relationship may be required under certain circumstances, the natural rights of parents in their children 'undeniably warrants deference and, absent a powerful countervailing interest, protection.' . . ." ' " (Citations omitted.) *In re Juvenile Appeal* (*Anonymous*), 181 Conn. 638, 640, 436 A.2d 290 (1980), quoting *In re Juvenile Appeal* (*Anonymous*), 177 Conn. 648, 671, 420 A.2d 875 (1979).

The statutory criteria set forth in General Statutes § 17-43a must be satisfied before a termination of parental rights can be accomplished. *In re Luis C.,* 210 Conn. 157, 163, 554 A.2d 722 (1989). General Statutes § 17-43a (b) (4) provided for the termination of parental rights if, upon clear and convincing evidence, it is proved that no ongoing parent-child relationship has existed in excess of one year,[3] and requires the court to undertake a two-pronged analysis. "First, there must be a determination that no parent-child relationship exists; and second, the court must look into the future and determine whether it would be detrimental to the child's best interests to allow time for such a relationship to develop." *In re Juvenile Appeal* (*84–3*), 1 Conn. App. 463, 479, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).

---

[3] General Statutes § 17-43a (b) (now § 17a-112 [b]) provides in pertinent part: "The superior court . . . may grant such petition if it finds, upon clear and convincing evidence, that the termination is in the best interest of the child and that . . . with respect to any nonconsenting parent, over an extended period of time, which . . . shall not be less than one year . . . (4) there is no ongong parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child."

The statutory term "no ongoing parent-child relationship" has been interpreted "to contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." *In re Juvenile Appeal (Anonymous)*, supra, 177 Conn. 670. In addition, the mere fact that there has been some minimal contact between the parent and the child does not require a determination that an ongoing parent-child relationship has existed in excess of one year. *In re Juvenile Appeal*, supra, 181 Conn. 646. In determining whether there is an ongoing parent-child relationship, the court should consider the feelings of the child toward the parent, especially if those feelings are positive rather than negative. See *In re Juvenile Appeal (84–6)*, 2 Conn. App. 705, 709, 483 A.2d 1101 (1984), cert. denied, 175 Conn. 801, 487 A.2d 564 (1985).

The trial court thoroughly articulated its findings pursuant to General Statutes § 17-43a (d) (now § 17a-112 [d]). Specifically, the court found that DCYS offered timely and appropriate services to the parents and made prolonged and extensive efforts to promote and facilitate visitation including providing the respondent with a bus pass, transporting Megan to and from several visits and changing visitation sites. Neither parent was prevented from maintaining a meaningful relationship with the child. Both the respondent and DCYS fulfilled their obligations and court ordered expectations. In particular, the court noted the respondent's laudable efforts to adjust her circumstances, conduct and conditions to persuade the court that it would be in the best interests of the child to return Megan to the respondent's home. By 1987, the respondent had successfully overcome her drug and alcohol addictions, as well as serious illnesses, and had stabilized her life. Megan, however, resists any suggestion that the

respondent is her mother or that she be returned to the respondent. She harbors only negative feelings for the respondent. Megan has strong positive feelings and emotional ties toward her foster parents, with whom she has lived since 1984.

In addition, the court noted that as reunification efforts progressed, Megan began to view visitation as a threat to her remaining with her foster family and began to resist visitation with the respondent. Her refusal manifested itself in tantrums, bed wetting, nightmares, and anger toward her foster mother and the DCYS worker. On the basis of these facts and the passage of time in this child's life since she had lived with the respondent, the court concluded that Megan does not view the respondent as a parent and that an ongoing parent-child relationship, as defined by statute, does not exist between the respondent and the child.

After determining the absence of a parent-child relationship, the court concluded that allowing further time for the establishment or reestablishment of a parent-child relationship would be detrimental to Megan's best interests. The court based its decision on testimony showing that the continuing uncertainty of her status and the traumatic effects of reunification efforts, as well as the futility of parenting classes for the respondent, would have a negative effect on Megan.

On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Davon M.*, 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). The trial court, following the mandates of General Statutes § 17-43a, properly determined, on the basis of clear and convincing evidence, that no ongoing parent-child relationship existed.

The judgment is affirmed.

In this opinion the other judges concurred.