IN RE TABITHA T. ET AL.*
(AC 17852)

O'Connell, C. J., and Sullivan and Dupont, Js.

Argued October 26, 1998—officially released January 26, 1999

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*David T. Stone*, for the appellant (respondent mother).

*Lawrence G. Widem*, assistant attorney general, with whom, on the brief, was *Richard Blumenthal*, attorney general, for the appellee (petitioner).

*Opinion*

SULLIVAN, J. The respondent mother (respondent) appeals from the judgments of the trial court terminating her parental rights with respect to her daughters, Tabitha and Christina. The respondent claims that the trial court improperly (1) failed to make a finding that the petitioner had made reasonable efforts to reunify the family pursuant to General Statutes § 17a-112 (c) (1)[1] or, alternatively, that the respondent was unwilling

[1] General Statutes (Rev. to 1995) § 17a-112 was amended both in 1995; Public Acts 1995, No. 95-238, § 3; and in 1996. Public Acts 1996, No. 96-246 § 18. General Statutes (Rev. to 1995) § 17a-112, as amended by Public Acts 1995, No. 95-238, § 3, provides in relevant part: "(b) The superior court upon hearing and notice . . . may grant such petition [for termination of parental rights] if it finds that the Department of Children and Families has made reasonable efforts to reunify the child with the parent and, upon clear and convincing evidence, that the termination is in the best interest of the child . . . ." That statute was further amended by Public Acts 1996, No. 96-246, § 18. Effective October 1, 1996, that statutes provides: "(c) The Superior Court, upon hearing and notice . . . may grant a petition filed pursuant to this section if it finds by clear and convincing evidence (1) that the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent . . . [and] (2) that termination is in the best interest of the child . . . ." The petitions in this case

or unable to benefit from such reunification efforts, (2) found that no ongoing parent-child relationship existed between the respondent and the children, (3) found that the children had been harmed as a result of the respondent's acts of omission or commission, (4) found that the respondent had failed to achieve personal rehabilitation, and (5) denied the respondent's motion to stay the petitioner's decision to end visits without allowing testimony or argument. We affirm the judgments of the trial court.

The following facts are relevant to this appeal. The respondent is the mother of six children, including Tabitha and Christina. She first married before she was sixteen. She had two children prior to her divorce in 1977. She then had two sons by another man. In 1987, she married the father of Tabitha and Christina, who were born in 1986 and 1988, respectively. She and the father are now divorced.

The respondent has a history of personal and mental health problems. As a child, she was sexually abused by her father. She has been diagnosed with bipolar disorder. She has also been hospitalized for suicide attempts, including a 1994 incident in which she attempted to drown herself. She has been evicted four times and suffered three house fires. She has voluntarily requested placement by the department for each of her six children on numerous occasions.

In August, 1996, Bruce Freedman, a psychologist who had been appointed by the court to evaluate the respondent and the two girls, reported that the respondent had not been adequately rehabilitated, had received

were filed on June 26, 1996, and the trial court stated in its memorandum of decision that that date was the adjudicatory date with respect to the petitions. The trial on the petitions in this case took place during 1997, and the trial court's references to § 17a-112 are to the revision of 1997. In this opinion, we also refer to § 17a-112 as codified in the revision to 1997.

poor marks from her parenting skills instructor, and was incapable of handling Tabitha or Christina. Freedman also reported the lack of a normal parent-child relationship and that both girls wanted not to return to their mother's care.

Both Tabitha and Christina were sexually abused by their brothers. When their father lived with them, he physically abused both girls and sexually abused Christina. Both girls now suffer from mental disorders. Prior to her placement, Tabitha wet and soiled her clothes. She was diagnosed as learning disabled. Also, the respondent's needs and inabilities have resulted in an unhealthy "parentification" of Tabitha. Christina was diagnosed as suffering from reactive attachment disorder and exhibits sexualized behavior that has concerned her counselor.

On January 31, 1995, Tabitha and Christina were adjudicated neglected and committed to the care of the department of children and families. On June 26, 1996, the department petitioned the court for the termination of parental rights with respect to the girls. The court ordered the termination of parental rights on October 23, 1997, and this appeal followed.

"The hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. See Practice Book § 1042.1 et seq. [now § 33-1 et seq.]. In the adjudicatory phase, the trial court determines whether the statutory ground for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether the termination of parental rights is in the best interests of the child. *In re Maximina V.*, 44 Conn. App. 80, 82–83, 686 A.2d 1005 (1997).

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached . . . nor do we retry the case or pass upon the credibility of the witnesses. . . . Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. . . . [W]e will disturb the findings of the trial court in both the adjudication and disposition phases only if they are clearly erroneous." (Internal quotation marks omitted.)" *In re Drew R.*, 47 Conn. App. 124, 127–28, 702 A.2d 647 (1997).

I

The respondent first claims that the trial court failed in the adjudicatory phase to find that the department had made reasonable efforts to reunify the family. Alternatively, the respondent claims that the court improperly found that she was unable to benefit from reunification. We disagree.

As part of the adjudication process, § 17a-112 (c) (1) requires that the court find by clear and convincing evidence that "the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ."[2]

---

[2] With regard to petitions filed prior to October 1, 1996, the court was required to find that the department "made reasonable efforts to reunify the child with the parent" unless "such reasonable efforts at reunification were not possible. . . ." General Statutes (Rev. to 1995) § 17a-112, as amended by Public Acts 1995, No. 95-238, § 3. As to petitions filed after October 1, 1996, the court is required to find that "the Department of Children and Families has made reasonable efforts to locate the parent and to reunify the child with the parent, *unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . .*" (Emphasis added.) General Statutes (Rev. to 1997) § 17a-112 (c) (1); see Public Acts 1996, No. 96-246, § 18. Because the petitions in this case were

"Before a termination of parental rights can be granted, the trial court must be convinced that the department has made reasonable efforts to reunite the child with his or her family. The term 'reasonable efforts' was recently addressed by this court: 'Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word "reasonable" nor the word "efforts" is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible.' *In re Eden F.*, 48 Conn. App. 290, 311-12, 710 A.2d 771, cert. granted on other grounds, 245 Conn. 917, 717 A.2d 234 (1998). The trial court's ruling on this issue should not be disturbed on appeal unless, in light of the evidence in the entire record, it is clearly erroneous. *In re Tabitha P.*, 39 Conn. App. 353, 361, 664 A.2d 1168 (1995)." *In re Jessica B.*, 50 Conn. App. 554, 565–66, 718 A.2d 997 (1998).

In light of the court's memorandum of decision and subsequent articulation, we are not persuaded either that the trial court failed to consider whether reasonable efforts had been made or that its conclusion that

---

filed prior to October 1, 1996, the court's finding that the respondent was unwilling or unable to benefit from reunification efforts would not have excused the department's failure to make such efforts. Because we hold, however, that the trial court correctly found that the department did make reasonable efforts to reunite the family, we need not consider whether the court correctly made the alternative finding—that the parent is unable to benefit from reunification. We note, however, that the record indicates that the trial court's finding that the respondent was unable to benefit from reunification was not clearly erroneous.

the department had made reasonable efforts to reunite the family was clearly erroneous. The trial court's articulation of June 17, 1998, provides a list of the services provided to the respondent, including psychiatric hospitalization, individual counseling, parenting classes, visitation and transportation. Foster care, visitation and counseling were also provided to the children.

## II

The respondent next claims that the court improperly found that there was no ongoing parent-child relationship. We disagree.

"Section 17a-112 (b) (4) [now § 17a-112 (c) (3) (D)] provides for the termination of parental rights if, upon clear and convincing evidence, it is proved that no ongoing parent-child relationship has existed in excess of one year. This part of the statute requires the trial court to undertake a two-pronged analysis. First, there must be a determination that no parent-child relationship exists, and second, the court must look into the future and determine whether it would be detrimental to the child's best interest to allow time for such a relationship to develop. *In re Juvenile Appeal (Anonymous)*, [177 Conn. 648, 670, 420 A.2d 875 (1979)]; *In re Michael M.*, [29 Conn. App. 112, 128, 614 A.2d 832 (1992)]; *In re Megan M.*, [24 Conn. App. 338, 340, 588 A.2d 239 (1991)]; *In re Juvenile Appeal (84-6)*, 2 Conn. App. 705, 708, 483 A.2d 1101 (1984), cert. denied, 195 Conn. 801, 487 A.2d 564 (1985); *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 477, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984).

"It is reasonable to read the language of no ongoing parent-child relationship to contemplate a situation in which, regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitively lost that relationship, so that despite its former existence

it has now been completely displaced. *In re Juvenile Appeal (Anonymous)*, [supra, 177 Conn. 670]; *In re Jessica M.*, 217 Conn. 459, 470, 586 A.2d 597 (1991); *In re Juvenile Appeal (84-6)*, supra, [2 Conn. App.] 708–709. In considering whether an ongoing parent-child relationship exists, the feelings of the child are of paramount importance. See *In re Michael M.*, [supra, 29 Conn. App. 129]; *In re Megan M.*, [supra, 24 Conn. App. 341]. The ultimate question is whether the child has no present memories or feelings for the natural parent. *In re Jessica M.*, supra, 468; *In re Juvenile Appeal (84-6)*, supra, 709. Feelings for the natural parent connotes feelings of a positive nature only. *In re Jessica M.*, supra, 469; *In re Juvenile Appeal (84-6)*, supra." *In re Kezia M.*, 33 Conn. App. 12, 20–21, 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993).

The court-appointed evaluator, Freedman, reported that "[t]he girls showed concern for their mother . . . but they did not show normal parent-child relationships." Moreover, "[b]oth girls made it clear that they did not wish to return to mother's care, now or in the future." We cannot conclude that the trial court's finding was clearly erroneous.

## III

The respondent claims that the trial court improperly found, by clear and convincing evidence, that she had failed to achieve sufficient rehabilitation. We disagree.

Section 17a-112 "requires the trial court to analyze the respondent's rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . A determination by the trial court . . . that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly

erroneous." (Citations omitted; internal quotation marks omitted.) *In re Christina V.*, 38 Conn. App. 214, 221, 660 A.2d 863 (1995).

The record clearly supports the trial court's finding. Contrary to the respondent's assertions, she did not meet the expectations set by the court in its January, 1995 neglect hearing with respect to the girls. Betty Gorman, an employee of the department of children and families, testified that the respondent attended individual therapy only sporadically, lapsed in her medication regime "many times," sometimes acted inappropriately during visits with the children, and failed to secure and maintain housing "for quite a period of time." Although another department worker, Paulette Marquis, testified that the respondent had largely complied with the court's expectations over the past nine months, Freedman noted that her efforts were "far from effective, adequate rehabilitation."

On the basis of our review of the record, we are not persuaded that the trial court's determination was clearly erroneous.

## IV

The respondent claims that the trial court improperly found, by clear and convincing evidence, that Tabitha and Christina had been harmed as a result of the respondent's acts of omission or commission. We disagree.

On the basis of our review of the record, we cannot conclude that the trial court's finding was clearly erroneous. While the children were in the respondent's care, the respondent failed to protect them from sexual abuse by their older brothers. At one point, the respondent specifically told Tabitha not to disclose to therapist Martha Roberts anything about the sexual abuse or any other goings on of the family.

## V

Finally, the respondent claims that the court improperly denied her motion "to stay the [department's] decision to end visits without allowing argument or testimony." She offers no analysis or authority to support this claim. "We are not required to review issues that have been improperly presented to this court through an inadequate brief. *Connecticut National Bank* v. *Giacomi*, 242 Conn. 17, 44–45, 699 A.2d 101 (1997). Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . *Cummings* v. *Twin Tool Mfg. Co.*, 40 Conn. App. 36, 45, 668 A.2d 1346 (1996)." (Internal quotation marks omitted.) *State* v. *Henderson*, 47 Conn. App. 542, 558, 706 A.2d 480, cert. denied, 244 Conn. 908, 713 A.2d 829 (1998). We, therefore, decline to review her claim as inadequately briefed.

The judgments are affirmed.

In this opinion the other judges concurred.