MEMORANDUM OF DECISION
On February 9, 1999, the Department of Children and Families ("DCF"), filed a petition to terminate the parental rights of Maritza R. and Mark A. to their child, Diamond A. On January 10, 2000, trial concerning the petition occurred in this court. For the reasons stated below, the court grants the petition.
FACTS
The court finds the following facts and credits the following evidence.
A. Background of the Case
Diamond A. was born on September 20, 1996. On November 5, 1996, a neglect petition was filed concerning her and an order of temporary custody ("OTC") was issued by the Superior Court for Juvenile Matters. One week earlier, on October 31, 1996, the child had been transported by ambulance to Yale New Haven Hospital with bruises on her face, left shoulder, left wrist, and left axilla. At the time, Diamond was living with her parents.
After the OTC was granted, Diamond was placed in foster care. On March 3, 1997, after a neglect adjudication, Diamond's custody was committed to DCF. Subsequently, the court extended her CT Page 715 commitment. She has remained in foster care since the issuance of the OTC.
The petition alleged two grounds as to the father for termination of his parental rights: abandonment and lack of an on-going parent-child relationship. As to the mother, the petition alleged failure to rehabilitate.
At trial, Maritza R. appeared with her counsel and presented her written consent to the termination of her parental rights. The court canvassed her as to her consent and found that it had been knowingly and voluntarily made, with the advice of competent counsel. The court accepted the consent.
The father did not appear at trial. The court's file reflects that on February 11, 1999, the court granted petitioner's motion for order of notice, based on DCF's assertions that all reasonable efforts to ascertain Mark A.'s residence had failed. Accompanying this motion was the affidavit of Almira Gonzalez, a DCF social worker, which described the efforts that had been made to locate Mark A. and listed agencies and persons contacted: New York "Track a Prisoner" Police Department, Connecticut Dept. of Social Services, parole office in New York, Child Support in Connecticut, and the mother, Maritza R.
Based on the court's order of notice, service by publication of the petition on Mark A. occurred in the New York Times on March 1, 1999, notifying the respondent father of a scheduled hearing at the Superior Court for Juvenile Matters on March 4, 1999. The court's Memorandum of Hearing for that date indicates that the father was not present.
At trial, Ms. Gonzalez testified as to the diligent efforts made to locate the father. She recalled that, when she first began work on the case in November, 1996, the father did not provide his true name; rather he gave her an alias, saying that his name was Ruben Martinez, not Mark A. He was aware of the neglect proceedings and DCF's involvement. His last contact with the child was in March, 1997. At the time, he was incarcerated in New Haven; later he was extradited to New York as a fugitive.
In view of Mark A.'s awareness of the neglect proceedings, DCF's diligent effort to locate him, the service by publication for the March 4, 1999 hearing on the petition, and his failure to appear either at that hearing or at trial, the court entered a CT Page 716 default as to Mark A.
B. The Father
Although he initially lived with Diamond and her mother, Mark A. was arrested in February, 1997 in a domestic violence dispute. Shortly thereafter, he was extradited to New York. The Prisoner Tracking System in New York advised DCF that he was released on parole in November, 1997. He has had no contact with DCF or Diamond since his release. In addition, he has not sent her letters or gifts. Mark A. has not inquired as to Diamond's welfare or offered himself as a resource for the child. He has not contributed to Diamond's support in any way.
In view of his departure from the state and the fact that he has had no contact with the child or DCF for almost three years, nothing more was presented concerning his background or present status.
C. The Child
Diamond has lived with the same foster family since she was six weeks old, now a period of over three years. Efforts toward reunification of the child with her mother were unsuccessful.
She has done very well in foster care. She remains developmentally on target and her medical care is up to date. She is an extremely intelligent, articulate child.
She is bonded to her foster family and calls her foster mother "Mommy." Her foster mother has expressed interest in adopting Diamond if she is legally available. The child has thrived in her foster home.
Diamond does not speak of Mark A. and has no present memories of him. This is unsurprising since he has had no contact with her for almost all of her life.
ADJUDICATION
A. Reunification
In order to terminate parental rights, DCF must initially show, by clear and convincing evidence, that DCF "has made reasonable efforts to locate the parent and to reunify the child CT Page 717 with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts." Gen. Gen. Stat. § 17a-112(c)(1).
The statute does not define the term "reasonable." Our Supreme Court has found that reasonable" is a term which varies according to its context and is synonymous with equitable, fair, and just, citing Webster's New International Dictionary (2d Ed.).State v. Antrim, 185 Conn. 118, 122 (1981) (citations omitted). More recently, in the termination of parental rights context, the Appellate Court stated that reasonable efforts means doing everything reasonable, not everything possible." In re SavannaM., 55 Conn. App. 807, 812-813 (1999) (citations omitted); In reJessica B., 50 Conn. App. 554, 566 (1998).
Based on the evidence presented at trial, the court finds, by clear and convincing evidence, that DCF made reasonable efforts to locate Mark A. He knew that DCF had been awarded temporary custody of Diamond in 1996. He did nothing, even after being released from incarceration in 1997, to remain involved in her life. Instead, he left her care to be provided by others. The evidence is clear and convincing that he was unable or unwilling to benefit from any reunification efforts.[2]
B. Statutory Grounds
To prevail in a nonconsensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See Inre Michael B., 49 Conn. App. 510, 512 (1998), cert. denied,247 Conn. 919 (1998). Conn. Gen. Stat. § 17a-112(c)(3).
DCF has alleged the grounds of abandonment and lack of an on-going parent-child relationship as to Mark A. The court finds that DCF has proven each ground by clear and convincing evidence. Again, as to Maritza R., in view of her consent, the court need not make findings as to the petition's allegations concerning her.
1. Abandonment
General Statutes § 17a-112(c)(3)(A) provides that a ground for termination exists when "[t]he child has been abandoned by the parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or CT Page 718 responsibility as to the welfare of the child." "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of a child." In reMigdalia M., 6 Conn. App. 194, 208-209, cert. denied,199 Conn. 809 (1986) (citation omitted). Conversely, "where a parent fails to visit a child, fails to display any love or affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209. The statutory term "maintain" implies a "continuing, reasonable degree of concern." Id. at 210.
Based on the foregoing discussion, the evidence of abandonment is clear and convincing. Mark A. abandoned Diamond after he left Connecticut via extradition in early 1997. He had no contact with her at all after February, 1997, even though he knew she was in DCF's care. He did not contact her after he was released on parole. He has not provided support for her, either emotionally or financially. He has not even inquired about her welfare. Without question. he has abandoned her.
2. No On-Going Relationship
DCF also alleges that there is no ongoing parent-child relationship between Diamond and Mark A. To prove this ground, DCF must show the absence of "the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and [that] to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child." Conn. Gen. Stat § 17a-112(c)(3)(D); In re Savanna M., 55 Conn. App. 807, 815
(1999). This ground encompasses a situation in which "regardless of fault, a child either has never known his or her parents, so that no relationship has ever developed between them, or has definitely lost that relationship, so that despite its former existence it has now been completely displaced." In re JuvenileAppeal (Anonymous), 181 Conn. 638, 645 (1980) (internal citation omitted). The decisive question is "whether the child has no present memories or feelings for the natural parent." Id. at 646. As the Appellate Court recently noted, "the feelings of the child are of paramount importance." In re Tabitha T.,51 Conn. App. 595, 602 (1999). "Feelings for the natural parent connotes feelings of a positive nature only." Id. CT Page 719
Here, based on the foregoing discussion, the evidence is clear and convincing that the required relationship between Diamond and Mark A. is absent. He has not been a part of her life since only a few months after she was born. She is bonded to her foster family, which has met her needs for a substantial period of time. There is no relationship between Diamond and Mark A.
In deciding whether it would be in Diamond's best interest to permit further time for a relationship with Mark A. to develop, the court may consider several factors. In re Savanna M.,55 Conn. App. at 816. In view of the extensive stay she has had with her foster family, her bonded relationships with them, the total dearth of contact she has had with her biological father, and the lack of any relationship between them, it is clearly not in her best interest to permit additional time to pass in foster care in order to allow her father to attempt to establish a relationship with her. It is also evident that he has no interest in doing so.
DISPOSITION OF THE TERMINATION PETITION
In the disposition phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn. Gen. Stat. § 17a-112(c)(2). The court can consider all events occurring through the close of the dispositional hearing. Practice Book § 33-5.
The Appellate Court has "consistently held that to allow a child to languish in foster care is not in the child's best interest." In re Drew R., 47 Conn. App. 124, 131 (1997). Time is of the essence in custody cases. In re Alexander V.,25 Conn. App. 741, 748 (1992), affd, 223 Conn. 557 (1992).
Three years and two months in foster care (as of the time of trial) constitutes almost all of Diamond's life. Based on the foregoing findings and discussion, the court finds, by clear and convincing evidence, that termination of Mark A.'s and Maritza R.'s parental rights is in Diamond's best interest. She needs and is entitled to permanency and stability in order to continue to properly develop. In view of Maritza R.'s consent to the termination of her parental rights and Mark A.'s abandonment of Diamond, there is no reason to continue legally temporary foster care. To do so may invite disruption of Diamond's development. The evidence is clear and convincing that Mark A.'s and Maritza R.'s parental rights must come to an end. CT Page 720
In arriving at a decision, the court must consider and make written findings regarding seven factors set out in General Statutes § 17a-112(d). See In re Tabitha P.39 Conn. App. 353.362 (1995). A discussion of these factors follows.
1) The timeliness, nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Based on the foregoing discussion, the court finds that DCF provided foster care for Diamond. No services could be offered to Mark A. since he abandoned Diamond and could not be located. In view of her consent, this issue is moot as to Maritza R., as are the other factors set forth below.
2) Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance and Child Welfare Act of 1980.
Based on the foregoing discussion, the court finds that DCF made reasonable efforts to locate Mark A., but that there was no reasonable possibility of reunification as a result of his abandonment of his child.
3) The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
It does not appear that court-ordered expectations concerning Mark A. were entered. This is unsurprising in view of the history of abandonment set forth above.
4) The feelings and emotional ties of the child with respect to his parents, any guardian of his person and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
After February, 1997, any relationship with Diamond had, as an infant, with Mark A. became non-existent. At this point, her emotional ties are to her foster family, to whom she is securely attached and bonded. CT Page 721
5) The age of the child.
Diamond is almost three years and four months old. For many years, our Supreme Court has noted the deleterious effect of prolonged temporary care of neglected children. In re JuvenileAppeal (83-CD), 189 Conn. 276, 292 (1983). It is not in the child's best interest that she remain in a legally temporary foster home. She is entitled to the legal permanency afforded by a termination.
6) The efforts the parent has made to adjust his circumstances or conditions to make it in the best interests of the child to return him to his home in the foreseeable future, including, but not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitation, communications or contributions and (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Based on the foregoing discussion, the court finds that Mark A. has not made reasonable efforts to adjust his circumstances or conditions to make it in Diamond's best interest to return to him. Effective in March, 1997, he abandoned her. He did not make any effort to maintain contact with her or DCF. The opportunity to develop and maintain a significant relationship with his child was lost.
7) The extent to which a parent has been prevented from maintaining a meaningful relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person, or by economic circumstances of the parent.
Mark A. did not face unreasonable interference from Maritza R. from any third persons, or from economic circumstances. His predicament is a consequence of his actions and his failures to act.
CONCLUSION
Based upon the foregoing findings, the court determines that it is in the best interest of Diamond A. for terminations of parental rights to enter with respect to the mother, Maritza R. and the father, Mark A. Accordingly, the court grants the CT Page 722 petition to terminate the parental rights of Maritza R. and Mark A.
The court further orders that the Commissioner of DCF is appointed statutory parent for Diamond A., for the purpose of securing an adoptive family. If the foster mother is willing to adopt, it is the court's direction that she receive first consideration to adopt Diamond. in accordance with DCF's recommendation. The Commissioner shall file with this court no later than sixty days following the date of judgment a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
It is so ordered.
BY THE COURT
ROBERT B. SHAPIRO JUDGE OF THE SUPERIOR COURT