[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] FINDINGS ON PETITION FOR TERMINATION OF PARENTAL RIGHTS
This is a petition for the termination of parental rights with respect to Aubrey S. Aubrey's mother, Laureen C., has consented to termination and was canvassed in an earlier proceeding. Although the respondent father, Edward S. (respondent), also offered to consent to termination, he unacceptably conditioned his consent, inter alia, on continued contact with the child. CT Page 12751
A trial with respect to the termination of the respondents parental rights was scheduled for October 16, 2000. The Department of Children and Families (DCF) made reasonable efforts to locate the respondent. A DCF social worker gave him actual notice of this trial date. He failed to appear for trial and is, therefore, defaulted.
In addition, based on clear and convincing evidence, the following facts are found.[1] Aubrey was born on June 1989. She is now eleven years of age. When she was only a year old, she was taken into custody by the Department of Children and Youth Services (DCYS), the predecessor to the petitioner DCF. She was adjudicated neglected on December 18, 1990. Aubrey was returned to her parents in 1991 but was again removed from them pursuant to an order of temporary custody on May 14, 1993. She was again adjudicated neglected on November 10, 1993. Aubrey remained in foster care for three years. Her subsequent return to her parents lasted only seven months. During that time she was kept out of school to canvas door-to-door for the purpose of obtaining money to purchase drugs for the respondent and her mother. Aubrey was again taken into custody pursuant to an order of temporary custody issued on December 5, 1996 and until recently has been in foster care since that date. She was adjudicated neglected a third time on October 16, 1997. She now resides with her maternal aunt and uncle.
On May 25, 1999, DCF filed a petition to terminate the respondent "s parental rights based on his failure to rehabilitate and the lack of any ongoing parent-child relationship. On December 15, 1999, the court granted DCF's motion to amend the petition to add the additional grounds of abandonment and the denial by reason of acts of omission and commission of the care, guidance or control necessary for Aubrey's physical, educational, moral or emotional well-being.
The respondent, whose date of birth is December 24, 1957, has a lengthy criminal history and has been in and out of prison throughout his adult life. He also has a long history of polysubstance abuse with a primary dependence on opiates. Although in prison he completed a substance abuse program offered to him by the Department of Corrections, he failed to attend the after-care program and has a high risk for relapse. The court has previously found that efforts to reunite the respondent and his daughter were not appropriate. The court has never issued the respondent expectations to facilitate such reunion. For several years, Aubrey has had no positive feelings nor any emotional ties with respect to he respondent; indeed, she fears him and fears contact by him. She does have positive feelings for and emotional ties with her aunt and uncle. The respondent has sent many letters and cards to his daughter. However, he has otherwise wholly failed to adjust his circumstances, conduct or CT Page 12752 conditions to make it in the best interest of the child to return her to the respondent in the foreseeable future. The respondent has no known home and continues to commit criminal acts which have resulted in his continued incarceration. The respondent's wholesale failure to maintain a meaningful relationship with his daughter is a product of his own life choices, specifically substance abuse and criminal activity and, by his own admission,[2] he has abdicated his parental responsibilities. His failure is not a result of the acts or omissions of any other person or of his economic circumstances.[3]
Having considered these matters, the court finds, based on clear and convincing evidence, that "there is no ongoing parent-child relationship, which means the relationship that ordinarily develops as a result of a parent having met on a day to day basis the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such parent-child relationship would be detrimental to the best interest of the child. . . ." General Statutes § 17a-112 (c)(D). See In re Kezia,33 Conn. App. 12, 20-21, 632 A.2d 1122, cert. denied, 228 Conn. 915,636 A.2d 847 (1993). That the respondent had some contact with Aubrey does not preclude a determination that there has been no on-going parent-child relationship. . . ." Id., 21.
The petitioner's claim of abandonment "focuses on the parent's conduct. . . . A lack of interest in the child is not the sole criterion in determining abandonment. . . . General Statutes § 17a-112 (b)(1) defines abandonment as the fail lure] to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child. . . . Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of interest, concern or responsibility for the welfare of a child. . . . Abandonment occurs where a parent fails to visit a child, does not display love or affection for the child, does not personally interact with the child, and demonstrates no concern for the child's welfare. . . .
"Section 17a-112 (b)(1) does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child. A parent must maintain a reasonable degree of interest in the welfare of his or her child. Maintain implies a continuing, reasonable degree of concern. . . .
"The commonly understood general obligations of parenthood entail these minimum attributes: (1) express love and affection for the child; (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate CT Page 12753 domicile; and (5) the duty to furnish social and religious guidance. (Citations omitted; emphasis added; internal quotation marks omitted.) Inre Roshawn R., 51 Conn. App. 44, 52-53, 720 A.2d 1112 (1998), quoting Inre Kezia M., 33 Conn. App. 12, 17-18, 632 A.2d 1122 (1993). Although the respondent did send cards and letters to Aubrey on a fairly regular basis, he did nothing else. This absence of interest in his daughter is especially telling during the periods when he was not incarcerated. The court finds by clear and convincing evidence that the respondent failed "to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." (Emphasis added.)
The court further finds by clear and convincing evidence that Aubrey was "denied, by reason of an act or acts of parental commission or omission . . . the care, guidance or control necessary for her physical, educational, moral or emotional wellbeing." General Statutes § 17a-112
(c). The evidence was that Aubrey's mother kept her out of school so that she could panhandle, door-to-door, to get money for drugs for her parents. Although the evidence was that this was done at Laureen C's urging, the drugs were for both parents, and the respondent did not try to stop Laureen from making her daughter engage in this activity. See Inre Tabitha T., 51 Conn. App. 595, 603, 722 A.2d 1232 (1999) (parent may be culpable for acts of commission where parent fails to protect child from acts of another).
The court is unable to find that the respondent failed to rehabilitate, despite the overwhelming evidence of this in the lay sense, because he never was "provided specific steps to take to facilitate the return of the child to the parent pursuant to section46b-129 . . ." General Statutes § 17a-112 (c)
Laureen C. voluntarily and knowingly consented to the termination of her parental rights earlier in these proceedings.
The clear and convincing evidence is that it is in Aubrey's best interests that the parental rights of both the respondent and Laureen C. be and they are hereby terminated. Indeed, this is the only reasonable conclusion that may be reached. Our courts have long noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD), 189 Conn. 276, 455 A.2d 1313
(1983).
The Commissioner of the Department of Children and Families is appointed statutory parent. Aubrey's aunt and uncle having expressed a desire co adopt her, the court directs that they be given first consideration in any adoption. The court further orders that a permanency plan for Aubrey be submitted within sixty days. A review plan for Aubrey CT Page 12754 shall be filed in accordance with state and federal law.
Dated at Middletown this 17th day of October, 2000.
BY THE COURT
Bruce L. Levin Judge of the Superior Court