MEMORANDUM OF DECISION 
On September 30, 1999, the Department of Children and Families, hereafter "DCF," filed a petition for the termination of the parental rights of Cassandra S. and Andre P. to their daughter, Adrienne P. The termination petition alleges that both parents have abandoned their child, and that they have failed to rehabilitate, so that they could parent their daughter. In addition, the petition alleges that they have no ongoing parent child relationship with her. Connecticut General Statutes § 17a-112(j)(3)(A), (B) and (D). The petition also alleges that both CT Page 40 parents were unable and unwilling to benefit from reunification services. Trial commenced and ended on December 14, 2000. The parents attended the trial and through their respective counsel vigorously defended the petition. For the reasons stated below, the court grants the petition for termination of the parental rights of Cassandra S. and Andre P.
From the evidence presented, the court finds the following facts:
 A. FACTS 
Adrienne was born on May 1998 and is now two years and seven months old. At the time of her birth, Cassandra was thirty-five years old and Andre was thirty-four. Adrienne is the younger of two children born to her mother and father and the youngest of four of her mother's children. All of the other children are not in Cassandra's care and Adrienne's older sister, who is also Andre's child, is the subject of other pending proceedings. DCF became involved with the family after Adrienne's birth as she was born with a positive toxicology for cocaine. During the ensuing investigation, DCF determined that Adrienne's mother, Cassandra, had been using drugs before the child's birth and also had not had any pre-natal care. Cassandra admitted her drug use to the investigator. Andre P., her father, denied he had any difficulties with illegal drugs and offered to care for Adrienne. However, he never permitted DCF to inspect his residence, which he occupied with his mother. Thereafter, DCF sought and secured an order of temporary custody on June 5, 1998. (Jones, J.) When Adrienne left the hospital where she was born, she went to foster care where she has remained ever since.
Adrienne was adjudicated neglected on July 15, 1998 and committed to DFC care and custody for one year. Her commitment to DCF has been extended since that date. She was initially placed with a family who had no plans to adopt her. When it became clear to DCF that her parents were not complying with the specific steps issued for them and had not made any progress toward rehabilitation, Adrienne was placed in a pre-adoptive home. She has done well there and is developmentally on target. Her foster family wishes to adopt her, should she become free for adoption.
The DCF social worker testified that at the time of the commencement of the case, Cassandra S. needed to address her substance abuse and deal with her homelessness. Cassandra's plan, due to her homelessness, was to leave the child with her godmother, who was also caring for her other child. The worker also knew that there was some domestic violence between Cassandra and Andre and that they did not live together. Andre P. was also suspected of substance abuse and needed an evaluation. The worker scheduled evaluations for both parents in June, 1998. Cassandra completed her evaluation in June, 1998 and Andre in September, 1998. Both CT Page 41 evaluations recommended further treatment for both parents, which neither parent has had to the present time.
The crucial specific steps issued for the parents to rehabilitate and have Adrienne returned to them required them to visit their child as often as permitted and to attend substance abuse assessment and to successfully complete any recommended treatment.[2] The court finds from the evidence that neither of the parents followed the specific steps nor did either one come close to complying with them. As stated, neither ever completed any drug treatment program. Records show that the mother was positive for the presence of cocaine and marihuana at the time of her third referral to substance abuse assessment on June 27, 2000. Four referrals in total were made for Andre and he tested positive on several occasions. Further, neither of the parents kept their whereabouts known to DCF. The worker testified that after numerous attempts to find the mother at home and speak with her and his inability to find Andre many times. He also testified that Andre had further involvement with the criminal justice system, a violation of a specific step, when he was arrested in October 17, 1999 and charged with assault in the third degree.[3]
Both parents did not visit with Adrienne in any meaningful way. Both were hostile to the DCF worker and Andre offered various excuses why he could not visit with Adrienne. Cassandra visited her daughter twice in 1998 and has not visited since that time. Because of her failure to visit the child, on May 11, 1999, her right to visit was terminated by the court. Andre visited a total of five times between September, 1998 to June, 1999. In June, 1999, he was under the assumption, after a discussion with Cassandra, that his rights to visit had also ended. The court file reflects that he was directed to call to confirm visitation each week, which he did not do. In addition to the parents' failure to take any steps to deal with their addiction, neither of the parents spoke with DCF about their child and her progress in her foster home. They did not send cards, letters or gifts. Neither of the parents, because of their failure to consistently visit, formed any connection to this child.
 B. ADJUDICATORY TERMINATION FINDINGS 1. Reasonable Reunification Efforts. 
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that it "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts. . . ." Connecticut General Statutes CT Page 42 § 17a-112(j)(1). The court does find, from the clear and convincing evidence, that reasonable reunification efforts were made by DCF. While both parents, through their counsel, vigorously challenged DCF's reunification efforts and argued that DCF had not met its statutory burden, the court is not persuaded. Initially, DCF identified the crucial issue, substance abuse, and made immediate referrals. The parents chose not to take advantage of the services offered at that time and have not done so since that time, although a number of referrals for treatment were made for each of the parents. The court finds that DCF did not have the obligation to pursue these parents and somehow force them to participate in services they had already rejected. "The law does not require the doing of a useless thing." Corsino v. Grover, 148 Conn. 299,308, 170 A, 2d 267 (1961). In addition, "reasonable efforts means doing everything reasonable, not everything possible." In re Tabitha T.,51 Conn. App. 595, 600, 722 A.2d 1232 (1000), In re Antonio M.,56 Conn. App. 534 (2000). The court finds that before DCF had the burden to refer these parents to additional scarce and expensive services, the parents had to make a sincere effort to rehabilitate. This, the court finds from the clear and convincing evidence, they failed to do. The court finds that both Cassandra S. and Andre P. were both unable and unwilling to benefit from reunification services.
2. Adjudicatoy findings 
 (a) Abandonment 
The court finds that both Cassandra S. and Andre P. have abandoned their daughter. While her father testified that this child is important to him and that he would like to be her father and care for her, he has not behaved in a way which lends credence to his words. Cassandra, through her counsel, stated that she and Andre could be good parents for this child. Her belief and hope that they could parent a child speaks to her resilience and her wishes for the future, but does not look at her past conduct. Any child needs more than hopes and wishes to provide daily love, care and nurturance. Adrienne needs this no more or less than any other child, Her parents have not transformed such feelings as they undoubtedly have into actions. Indeed, the evidence of abandonment is not open to doubt and well beyond the legally required standard of proof. [The abandonment statute] "does not contemplate a sporadic showing of the indicia of interest, concern or responsibility for the welfare of a child." In re Kezia M., 33 Conn. App. 12, 18. 632 A.2d 1122 (1993). "A parent must maintain a reasonable degree of interest in the welfare of his or her child. `Maintain' implies a continuing, reasonable degree of concern." (Internal quotation marks omitted.) In re Michael M.,29 Conn. App. 112, 614 A.2d 832 (1992); In re Rayna M., 13 Conn. App. 23. 37-38. 534 A.2d 897 (1987); In re Migdalia M., 6 Conn. App. 194, CT Page 43 208-209, 504 A.2d 533. (1986). Both Cassandra S. and Andre P. have abandoned this child in the legal meaning of the term.
(b) Failure to Rehabilitate 
Adrienne was adjudicated neglected on July 15, 1998 and was committed to the care and custody of DCF. The court further finds, by clear and convincing evidence, that as of September 30, 1999, neither Cassandra nor Andre had achieved such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of their daughter, they could assume a responsible position in her life. Connecticut General Statutes § 17a-112(j)(3)(B). Neither participated in the services offered to address her or his substance abuse. Neither has demonstrated ongoing care and concern for their daughter nor has done anything to rehabilitate.
"`Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent." In re Migdalia M., 6 Conn. App. 194, 203, 504 A.2d 532
(1986), see also; In re Juvenile Appeal, 1 Conn. App. 463, 477,473 A.2d 795 (1984). The statutory framework requires the court to analyze the parent's rehabilitation "as it relates to the needs of the particular child" and consider if such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 1167,554 A.2d 722 (1989), In re Hector L., 53 Conn. App. 359, 366-367,730 A.2d 106 (1999). Because of this requirement that the court predict what may happen within a "reasonable time" after the filing of the termination petitions, the court must consider not only the parents' conduct prior to the filing of the petition, but also their conduct since that time. In this case, this was a period of over one year, during which time there has been no change.
(b) No Ongoing parent-child relationship.
DCF has alleged a third ground for the termination of the parental rights of Cassandra S. and Andre P., which is that there is no ongoing parent-child relationship between either of the parents and their daughter. While it is the case that there would appear to be no such relationship with the parents, the Connecticut Supreme Court held in the case of In re Valerie D., 223 Conn. 492. 534. 613 A.2d 748 (1992), that this ground is unconstitutional when applied to circumstances where the state itself has caused the failure of such a relationship. Here, as was the case in In re Valerie D., the child in question came into DCF care immediately after her birth and release from the hospital in which she was born. It is for these reasons that the court dismisses the third ground in this case. CT Page 44
 C. REQUIRED FINDINGS 
The court makes the following factual findings required by Connecticut General Statutes § 17a-112(k).
1) Appropriate and timely services were provided by DCF to the family. These include referrals for both parents to deal with issues of substance abuse and a referral for Cassandra for parenting. DCF also provided visitation and case management services to the parents.
2) As previously noted, the court finds by clear and convincing evidence, reasonable reunification efforts were made by DCF and that the parents were unwilling or unable to benefit from them.
3) The terms of any applicable orders entered into and agreed to by any individual or agency and the extent of fulfillment of those obligations. The court finds that reasonable court expectations were set for both parents. Neither was minimally able to fulfill them, Neither of the parents has dealt with their abuse of drugs.
4) The feelings and emotional ties of the child with respect to the parent, any guardian of the person and any person who has exercised physical care, custody and control of the child for at least one year and with whom the child has developed significant emotional ties. Adrienne has not lived with her present foster family for quite a year. However, she is closely connected to them and is in need of permanency. She has not seen her mother for two years and has not seen her father since June. 1999.
5) Finding regarding the age of the child: Adrienne is two years and seven months old.
6) Finding regarding efforts of the parents to adjust their circumstances. conduct or conditions to make it in the best interests of the child to return him to their home in the foreseeable future and (A) the extent to which the parents have maintained contact with the child as part of an effort to reunite the child with them, provided that the court may give weight to incidental visitations, communications or contributions and (B) the maintenance of regular contact or communications with the guardian or other custodian of the child. As detailed above, the court finds that neither Cassandra S. nor Andre P. have made the necessary changes in their lives to accommodate the care and nurturing of this child.
7) Finding regarding the extent to which a parent has been prevented CT Page 45 from maintaining a reasonable relationship with the child by the unreasonable act or conduct of the other parent of the child, or the unreasonable act of any other person or by the economic circumstances of the parents. No such conduct is noted. DCF took steps for a number of years to assist this family. Both parents did not take advantage of the help that was offered to them.
 D. DISPOSITION 
In hearing a termination of parental rights case, the court must first determine whether or not the grounds for termination have been proven by clear and convincing evidence. If so, only then may it consider what action is in the best interests of the child at issue.
 "A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the best interests of the child." (Citations omitted; internal quotation marks omitted.) In re Danuael D., 51 Conn. App. 829, 835-37, 724 A.2d 546 (1999).
The court has found that two of the three grounds alleged for termination of the parental rights of Cassandra S. and Andre P. have been proven by clear and convincing evidence. The court has made the seven statutory findings required, which all weigh in favor of termination being in this child's best interests. The court concludes, from the clear and convincing evidence, that Adrienne cannot wait any longer for permanency. Waiting for her parents to change their lives when they have shown no inclination to do so in the last two years would be waiting for events which neither parent has demonstrated could happen soon, if at all.
Our courts have noted the "deleterious effect of prolonged temporary care of abused and neglected children." In re Juvenile Appeal (84-CD),189 Conn. 276, 455 A.2d 1313 (1983). In addition, "[b]ecause of the psychological effects of prolonged termination proceedings on young children, time is of the essence . . ." In re Alexander V.,25 Conn. App. 741, 748. 596 A.2d 930 (1992). The court concludes, from the clear and convincing testimony, that it is in the best interests of CT Page 46 Adrienne to have permanency and stability in her life. The court finds that it is in her best interests that her parents' rights to her be terminated.
The court therefore orders that a termination of parental rights enter with respect to Cassandra S. and Andre P. Adrienne's present foster family has expressed an unequivocal desire to adopt Adrienne and the court directs that they be given first consideration in any adoption, as is presently the DCF plan for this child. The court appoints the Commissioner of the Department of Children and Families as the statutory parent. The court further orders that a permanency plan for Adrienne and a review plan for her be filed in accordance with state and federal law.
Barbara M. Quinn, Presiding Judge Child Protection Session