MEMORANDUM OF DECISION
This is an action for termination of parental rights brought by the Commissioner of the Department of Children and Families ("DCF"). The respondent, Diane B., is the biological mother of the children. The respondent, Leonard N., is the biological father of the children.
PROCEDURAL BACKGROUND
On June 21, 1995, DCF filed neglect petitions alleging that Leonard and Leona were neglected in that the children were being denied proper care and attention, physically, educationally, emotionally or morally and that the children were being permitted to live under conditions, circumstances or associations injurious to their well-being. Conn. Gen. Stat. §46b-120 (8)(B)(C).
On June 21, 1995, the court granted DCF an order of temporary custody with regard to the children.
On May 10, 1996, the court adjudicated the children neglected and committed them to the care and custody of DCF.
On April 30, 1998 and May 6, 1999, the court found that continuing efforts to reunite the family were no longer appropriate with regard to both parents.
On April 28, 1999, DCF filed a petition for termination of parental rights of the biological parents. With regard to Diane, the petitioner alleged that the children had been found in a prior proceeding to have been neglected and the mother had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the needs and age of the children, she could CT Page 7866 assume a responsible position in the life of the children. Conn. Gen.Stat. § 17a-112 (c)(3)(B). The petitioner also alleged that there is no ongoing parent/child relationship with the mother that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral, or educational needs of the children and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best interest of the children. Conn. Gen. Stat. § 17a-112 (c)(3)(D). The petitioner also alleged that the children had been abandoned in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen. Stat. §17a-112 (c)(3)(A).
With regard to Leonard N., the petitioner alleged that the children had been found in a prior proceeding to have been neglected and the father had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the needs and age of the children, he could assume a responsible position in the life of the children. Conn. Gen. Stat. § 17a-112 (c)(3)(B). The petitioner also alleged that there is no ongoing parent/child relationship with the father that ordinarily develops as a result of a parent having met on a continuing basis the physical, emotional, moral, or educational needs of the children and to allow further time for the establishment or reestablishment of such parent/child relationship would be detrimental to the best interest of the children. Conn. Gen. Stat.
§ 17a-112 (c)(3)(D). The petitioner also alleged that the children had been abandoned in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen. Stat. § 17a-112 (c)(3)(A).
On September 17, 1999, Diane B.'s parental rights were terminated after a default trial.
The trial regarding Leonard N. began on May 10, 2000. After several witnesses testified, the father's competency was called into question. A review of the record revealed that there had been no competency evaluation or hearing regarding Leonard N. However, the court had appointed a Guardian ad Litem for him. The parties moved that the court enter a mistrial. The court entered the mistrial and ordered that a competency evaluation of Leonard N. be done and that a competency hearing then take place. At the competency hearing, the parties stipulated that based on Dr. Krulee's evaluation, Leonard N. is competent. A new trial took place on June 15, 2000. The parties stipulated that the exhibits and testimony from May 10, 2000, were evidence that could be considered by the court. CT Page 7867
For the reasons stated below, the court hereby terminates the parental rights of Leonard N.
FACTUAL FINDINGS
The court makes the following findings by clear and convincing evidence.
Leonard and Leona were initially placed in foster care in June of 1995 because Leonard N. had allowed a stranger to take both of his children from him. The stranger subsequently contacted DCF the same evening and turned over the children to the Department. Leonard N. did not contact the police immediately. Instead, he went to church the next day, at which time church members urged him to contact the police regarding his missing children.
When the children were placed in DCF care, Leonard was barely verbal, and Leona was non-verbal and not potty-trained. The children were placed together with the same foster parent that Leonard N. was with for nine years.
On January 4, 1996, Leonard N. was provided with specific steps that require him to keep his whereabouts known to DCF, engage in individual counseling and visit with the children as often as DCF permitted.
Visitation
In 1996, Leonard N. missed eighteen visits with his children. Between January 1, 1997 and April 14, 1997, Leonard N. failed to attend approximately half of the scheduled visits. During the remainder of 1997, he only visited his children on two occasions. Leonard N.'s whereabouts were unknown to DCF between May and July, 1997. He contacted DCF in July to let them know he had moved to New York. He subsequently moved from New York to North Carolina.
Leonard N. only saw his children three times in 1998. He returned to Connecticut in October of 1998 and since that time he has had regular bi-weekly visitation with his children.
There is very little interaction between Leonard N. and his children during visits. Instead, the children are aloof from their father and tend to play together. On occasion Leonard N. is on the phone or asleep. Leonard does, however, appear to be comfortable with his father. Leona also appears to be comfortable during visits, however, she engages in bed-wetting after the visits.
Mental Health
CT Page 7868
Leonard N. was referred by DCF for mental health treatment regarding his depression and suicidal ideation. On September 21, 1995, his therapist at Dixwell-Newhallville Mental Health Clinic ("Dixwell"), informed DCF that she did not believe the children should be returned to their father.
At Dixwell, Leonard N. was diagnosed with psychotic disorder, because he hears voices, and was found to have borderline intellectual functioning. He began taking medication to address his psychotic features and was compliant with his treatment until the beginning of 1997. After he returned from North Carolina in October of 1998, he resumed treatment at Dixwell and for the most part has been compliant with his treatment.
Leonard N. has had multiple psychological evaluations since the inception of this case. On February 7, 1996, Dr. David Mantell performed a clinical and interactional evaluation. He found Leonard N. to be an educably retarded, dependent man with a history of psychotic mental disorder. He found that Leonard N. needed regular and intensive mental health care. Based on his evaluation, Dr. Mantell seriously doubted that Leonard N. had the intellectual and emotional capacity to raise the children and suggested that an alternate arrangement be sought.
Dr. Derek Franklin performed an evaluation of Leonard N. and the children in October of 1999, to assess Leonard N.'s overall level of functioning. He found that Leonard N. is intellectually limited and has a history of significant mental illness. He testified that his major concern regarding Leonard N.'s ability to parent is his personality functioning.[2] He did not recommend reunification, however, he testified that it was in the children's best interest for them to continue to have visiting contact with their father. While he found the children to be aloof during visits, he also testified that they do recognize Leonard N. as their father.
The Children
Leonard and Leona have thrived in foster care. Both children are mildly mentally retarded. The foster mother and her daughter have spent significant time and effort helping these children. When they first arrived in the foster home they did not speak and did not know how to use utensils to eat. The foster mother testified that they were scared and closed off from the people around them. She also testified that they are now well behaved children who know the difference between right and wrong. Leonard has made tremendous progress in school and is currently functioning at a third grade level. Leona has made much slower progress and is currently functioning at a pre-k level. The children call their CT Page 7869 foster mother "mama" and her daughter "aunty". The foster mother loves the children and would like to adopt them. While she is seventy-four years old, she is in perfect health. If anything were to happen to her, her daughter would like to adopt the children.
ADJUDICATION
TERMINATION ADJUDICATION
A termination petition that can sever family ties implicates serious constitutional concerns. The United States Supreme Court held in Santoskyvs. Kramer, 455 U.S. 745, 753 (1982) that: "the fundamental liberty interests of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents where they have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."
However, parents' constitutional rights do not exist in a vacuum without reference to the rights of others in the family. In particular, they do not override a child's right to be safe and to grow and to be nurtured in a supportive environment. As set forth in Conn. Gen. Stat.
§ 17a-101 (a): "the public policy of this state is: to protect children whose health and welfare may be adversely affected through injury and neglect."
A. Reunification
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF has "made reasonable efforts to locate the parent and reunify the child with the parent unless the court finds in the proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112 (c)(1). The court need not make such a finding, however, "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b
that such efforts are not appropriate." Id.
The court made the requisite finding on several dates that reunification efforts were no longer appropriate with regard to the biological parents.
B. Statutory Grounds
To prevail in a non-consensual termination of parental rights case, DCF must also prove by clear and convincing evidence that one of several statutory grounds for termination exists. See In re Michael B.,49 Conn. App. 510, 512 (1998); Conn. Gen. Stat. § 17a-112 (c)(3). In CT Page 7870 this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book §33-3(a). The relevant date in this case is April 28, 1999.
FAILURE TO REHABILITATE
A statutory ground for termination arises when "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen.Stat. § 17a-112 (c)(3)(B). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child and further, that such rehabilitation must be foreseeable within a reasonable time." In re Luis C., 210 Conn. 157, 167
(1989).
No dispute exists that the court has previously found the children to have been "neglected" or "uncared for" thus satisfying a statutory prerequisite. The rest of the statute requires the court to find whether the facts "encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a responsible position in the life of the child." Conn. Gen. Stat. §17a-112 (c)(3)(B).
It is fundamental that a parent must demonstrate the ability to be consistent in his contact with his children in order to prove rehabilitation to the status of a responsible parent. As of the relevant adjudicatory date, Leonard N. had been virtually absent from his children's lives for eighteen months and had only recently begun to visit regularly with his children. If a parent consistently fails to visit with his children, he is clearly not prepared to care for the children on a regular basis with or without services. Leonard N. had also not had a stable living arrangement, moving to two different States during the eighteen months he was unavailable to his children. Leonard N. had also stopped counseling for approximately eighteen months and had only recently reengaged in counseling as of the relevant adjudicatory date. Additionally, Dr. Mantell testified that he did not believe that the children should be reunified with their father because of the father's psychotic features and his limited capacity to understand and address the specialized needs of his children. For all these reasons, the court finds by clear and convincing evidence that Leonard N. has failed to rehabilitate within the meaning of the statute.
ABANDONMENT
CT Page 7871
The petitioner alleges that the children have been abandoned by their father "in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." Conn. Gen. Stat. § 17a-112 (c)(3)(A). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia,6 Conn. App. 194, 208-209, cert. denied, 199 Conn. 309 (1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209.
There are five commonly understood general obligations of parenthood: "(1) express love and affection for the child: (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." Id.
"Abandonment focuses on the parent's conduct." In re Juvenile Appeal,183 Conn. 11, 14 (1981). Leonard N. loves his children. He has intermittently expressed personal concern over their welfare. As of the relevant adjudicatory date, however, Leonard N. had not visited with the children regularly and had moved to two different States during the time the children were in custody. He had not kept in contact with the foster parent regarding the welfare of the children and has not supplied any financial assistance to the children.
When a parent voluntarily chooses to not make himself available to his young children for a prolonged period of time, he has abandoned those children in a clear and compelling way. The court recognizes that Leonard N. had started to visit more regularly as of the relevant adjudicatory date. This fact, however, is insufficient to overcome the court's finding that he had abandoned his children by separating himself from them for an eighteen month period at a critical juncture in their young lives.[3]
The court finds by clear and convincing evidence that Leonard N. abandoned his children within the meaning of the statute.
NO ONGOING PARENT/CHILD RELATIONSHIP
The petitioner also alleges that Leonard N. has no ongoing parent/child relationship with his children that ordinarily develops as the result of the parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for CT Page 7872 the establishment or reestablishment of such a parent/child relationship would be detrimental to the best interest of the child. Conn. Gen. Stat.
§ 17a-112 (c)(3)(D). The Connecticut Supreme Court in In re JessicaM., 217 Conn. 459 (1991) found that termination on these grounds is inappropriate unless "the child has no present memories or feelings for the natural parent" or that if such child does have some memories. "no positive emotional aspects of their relationship survive." Id. at 468.
The Connecticut Supreme Court has held that termination is improper where the lack of an ongoing parent/child relationship is the "direct result" of a prior custody determination. In re Valerie D., 223 Conn. 492
(1992).
The court finds that DCF has not proven by clear and convincing evidence that there is no ongoing parent/child relationship within the meaning of the statute. "In determining whether there is no ongoing parent-child relationship the court should consider the feelings of the child towards the parent especially if those feelings are positive rather than negative." In re Megan M., 24 Conn. App. 338, 341 (1991). At various times, the children have appeared to be comfortable with their father and happy to see him. Dr. Mantell testified that as of the time he did his evaluation, he was not recommending no contact. There is insufficient evidence for the court to find that no positive emotional aspects of the parent/child relationship survive and therefore the petitioner has failed to prove this ground.
MANDATORY FINDINGS
With respect to Leonard N., as required by Conn. Gen. Stat. § 17a-112
(d), the court makes the following findings:
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Leonard was offered individual counseling and visitation with his children. The court finds that based on the evidence presented, timely and appropriate services were offered to Leonard N.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance Child Welfare Act of 1980.
The court finds that DCF made reasonable efforts to reunite the family. For much of the time the children were in custody, Leonard N. chose to be out of Connecticut. He also stopped individual counseling for a period of time. CT Page 7873
3. The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
Leonard N. initially failed to keep his whereabouts known and failed to visit regularly with the children. Since Leonard N. returned to Connecticut in October of 1998, he has had regular visitation with his children, has been involved in individual counseling and has worked steadily.
4. The feelings and emotional ties of the child with respect to his parents, any guardian and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
The children love their foster mother. They know who their father is but do not have a close emotional tie with him.
5. The age of the child.
Leonard is nine years old. Leona is eight years old.
6. The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, and not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and, (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Since Leonard N. returned to Connecticut in October of 1998, he has had regular visitation with his children, has been involved in individual counseling and has worked steadily. Prior to this time, he was not visiting with his children and was not compliant with his psychological treatment.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person, or by economic circumstances of the parent.
Leonard N. has not been prevented from maintaining a relationship with his children by the unreasonable act of anyone. CT Page 7874
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn Gen. Stat. §17a-112 (c)(2). The court can consider all events occurring through the close of the dispositional hearing. Connecticut Practice Book 33-5.
"It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children's Services, supra,458 U.S. 502, 513 (1982).
Leonard and Leona have been in foster care for five years. They need and deserve permanency. Leonard N. has attempted to visit regularly with the children over the last year and appears to be a kind man who genuinely loves his children. However, both Dr. Mantell and Dr. Franklin believe that it is highly unlikely that Leonard N. will ever be capable of parenting his children, given his personality functioning, cognitive abilities and his limited understanding of the specialized needs of his children.
This is not a case, however, where the court believes that the father should be totally precluded from seeing his children. Leonard and Leona know who their father is and they do not have a negative relationship with him. The court strongly recommends that DCF have the children evaluated by Dr. Franklin again to determine whether or not there should be a continuing visiting relationship with their father. If Dr. Franklin still believes this is in the children's best interest, DCF should work closely with the foster mother to encourage her to continue to allow visitation while the adoption process is pending and after it has been completed.
The court finds by clear and convincing evidence that it is in the best interest of the children that the parental rights of Leonard N. be terminated. Accordingly, a termination of the parental rights of Leonard N. is ordered.
It is further ordered that the Commissioner of DCF be appointed statutory parent for Leonard and Leona for the purpose of securing an adoptive home. The Commissioner shall file with this court, no later than 60 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required CT Page 7875 by state and federal law.
CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT