MEMORANDUM OF DECISION
CT Page 8068
This case presents a petition for tenrunation of parental rights brought by the Commissioner of the Department of Children and Families (DCF). The respondent, Gladys H., is the biological mother of Jennifer and Sandra. The respondent, Rafael O., a/k/a Ralph O., is the biological father of Jennifer. The respondent, Jose C., is the biological father of Sandra.
PROCEDURAL BACKGROUND
On June 21, 1996, DCF filed a neglect petition regarding Jennifer and Sandra, alleging that the children were being permitted to live under conditions, circumstances or associations injurious to the children's well-being and that the children had been denied proper care and attention physically, emotionally and morally. On the same date the court entered an order of temporary custody with regard to Jennifer and Sandra.[2]
On March 5, 1997, Jennifer and Sandra were adjudicated as neglected children and committed to the custody of DCF.
On March 16, 1999, DCF filed petitions to terminate the parental rights of Gladys H., Rafael O. and Jose C.
On April 6, 1999, the court made a finding that continuing efforts to reunify Sandra with the family were no longer appropriate. On April 7, 1999, the court made a finding that continuing efforts to reunify Jennifer with the family were no longer appropriate.
With regard to Gladys H., the petitioner alleged that the children had been found in a prior proceeding to have been neglected and the mother had failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the needs and age of the children, she could assume a responsible position in the life of the children. Conn. Gen. Stat. § 17a-112 (c)(3)(B). The petitioner also alleged that the children had been abandoned in the sense that the mother failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the children. Conn. Gen.Stat. § 17a-112 (c)(3)(A).
With regard to Jose C., the petitioner alleged that the child, Sandra, had been abandoned in the sense that the parent failed to maintain a reasonable degree "of interest, concern or responsibility as to the welfare of the child. Conn. Gen. Stat. § 17a-112 (c)(3)(A). The petitioner also alleged that Jose has failed to achieve such a degree of CT Page 8069 personal rehabilitation as would encourage the belief that within a reasonable time he could assume a responsible position in the life of the child. Conn. Gen. Stat. § 17a-112 (c)(3)(B). The petitioner also alleged that there is no ongoing parent/child relationship between Jose and Sandra. Conn. Gen. Stat. § 17a-112 (c)(3)(D).
The petitioner alleged that Rafael O. has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time he could assume a responsible position in the life of the child. Conn. Gen. Stat. § 17a-112 (c)(3)(B). The petitioner also alleged that there is no ongoing parent! child relationship between Rafael and Jennifer. Conn. Gen. Stat. § 17a-112
(c)(3)(D).
On the first day of trial, the petitioner withdrew the count of no ongoing parent/child relationship with regard to Rafael O. Counsel for Rafael then made a motion for continuance as regards to his client only. All of the parties were in favor of this continuance and the court granted the motion as to Rafael only.
Gladys H. had proper notice of the proceedings and had counsel appointed for her. She was defaulted for failure to appear at trial. Her counsel participated at the trial and cross-examined witnesses.
Jose C. was provided with proper notice of these proceedings. He has never participated in the legal proceedings regarding his daughter. He was defaulted at trial for failure to appear.
For the reasons stated below, the court grants the termination petitions with regard to Gladys H. and Jose C.
FACTUAL FINDINGS
The court makes the following findings of fact by clear and convincing evidence.
Gladys H.
On January 15, 1997, Gladys was provided with expectations that included keeping her whereabouts known to DCF, visiting the children as often as DCF permitted, participating in counseling, no substance abuse, no further involvement with the criminal justice system and meeting regularly with her probation officer. Gladys H. has not visited with Jennifer and Sandra since May of 1998 despite being informed by DCF that she could have weekly visitation. She has struggled with ongoing addiction problems. DCF referred Gladys to multiple substance abuse CT Page 8070 programs. She completed one in patient program in 1996 but subsequently relapsed and has failed to complete any other drug treatment programs that she was referred to by DCF. She has been incarcerated and has violated her probation during the time period that the children were in DCF custody. In 1999, she was charged with prostitution and convicted on two separate occasions. After she was most recently released from prison in March of 2000, she failed to contact DCF to inquire about the welfare of her children and has failed to report to her probation officer as of May 22, 2000.
Gladys is currently whereabouts unknown. She did not appear at trial despite having notice of the termination proceedings.
Jose C.
Jose C. has never met his daughter, Sandra, and has never contacted DCF regarding her welfare despite having proper statutory notice of the termination proceedings. His daughter has no memories of him although she has stated a desire to meet him.
The Children
Jennifer and Sandra are placed together in the same foster home. They view their foster mother as their psychological parent. They do not view their mother as their psychological parent. They are both involved in individual therapy on a weekly basis. They are both anxious about their futures and specifically where and with whom they are going to live. Their therapists testified credibly that they are both in need of consistency and permanency.
REASONABLE EFFORTS
In order to terminate parental rights, DCF must initially show by clear and convincing evidence that DCF has "made reasonable efforts to locate the parent and reunify the child with the parent unless the court finds in the proceeding that the parent is unable or unwilling to benefit from reunification efforts." Conn. Gen. Stat. § 17a-112 (c)(1). The court need not make such a finding, however, "if a court has determined at a hearing pursuant to subsection (b) of section 17a-110 or section 17a-111b
that such efforts are not appropriate." Id.
The court made the requisite findings on April 6, 1999 and April 7, 1999, that reunification efforts were no longer appropriate.
TERMINATION ADJUDICATION
CT Page 8071
A termination petition that can sever family ties implicates serious constitutional concerns. The United States Supreme Court held in Santoskyvs. Kramer. 455 U.S. 745, 753 (1982) that: "the fundamental liberty interests of natural parents in the care, custody and management of their child does not evaporate simply because they have not been model parents where they have lost temporary custody of their child to the State. Even when blood relationships are strained, parents retain a vital interest in preventing the irretrievable destruction of their family life."
However, parents' constitutional rights do not exist in a vacuum without reference to the rights of others in the family. In particular, they do not override a child's right to be safe and to grow and to be nurtured in a supportive environment. As set forth in Conn. Gen. Stat.
§ 17a-101(a): "the public policy of this state is: to protect children whose health and welfare may be adversely affected through injury and neglect."
STATUTORY GROUNDS
To prevail in a non-consensual termination of parental rights case, DCF must prove by clear and convincing evidence that one of several statutory grounds for termination exists. See In re Michael B., 49 Conn. App. 510,512 (1998); Conn. Gen. Stat. § 17a-112 (c)(3). In this adjudicatory phase, the court is limited to events preceding the filing of the petition or the latest amendment. See Practice Book § 33-3(a). The relevant date in this case is March 16, 1999.
FAILURE TO REHABILITATE
A statutory ground for termination arises when "the parent of a child who (1) has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age "and needs of the child, such parent could assume a responsible position in the life of the child." Conn.Gen. Stat. § 17a-112 (c)(3)(B). The statute requires the court to analyze the parents' rehabilitative status "as it relates to the needs of the particular child and further, that such rehabilitation must be foreseeable within a reasonable time." In re Luis C., 210 Conn. 157, 167
(1989).
No dispute exists that the court has previously found Jennifer and Sandra to have been "neglected" thus satisfying a statutory prerequisite. The rest of the statute requires the court to find whether the facts "encourage the belief that within a reasonable time, considering the age and needs of the child, such parent could assume a CT Page 8072 responsible position in the life of the child." Conn. Gen. Stat. §17a-112 (c)(3)(B). The court finds by clear and convincing evidence that the respondents, Gladys H. and Jose C. have failed to rehabilitate within the meaning of the statute.
It is fundamental that a parent must demonstrate the ability to be consistent in her contact with her children in order to prove rehabilitation to the status of a responsible parent. As of the relevant adjudicatory date, Gladys had been absent from her children's lives for almost a year. If a parent consistently fails to visit with her children, she is clearly not prepared to care for the children on a regular basis, with or without services. Gladys has also failed to overcome her substance abuse problem and has been incarcerated during the time period the children have been in DCF custody. The court therefore finds by clear and convincing evidence that Gladys has failed to rehabilitate within the meaning of the statute because the facts do not encourage the belief that within a reasonable time she can assume a responsible position within the lives of the children.
Jose C. has not had any contact with Sandra since she was born. His behavior represents a complete abdication of all of his responsibilities as a parent and therefore the court finds by clear and convincing evidence that he has failed to rehabilitate within the meaning of the statute.
ABANDONMENT
The petitioner alleges that the children have been abandoned by their parents "in the sense that the parent failed to maintain a reasonable degree of interest, concern or responsibility as to the welfare of the child." Conn. Gen. Stat. § 17a-112 (c)(3)(A). "Attempts to achieve contact with a child, telephone calls, the sending of cards and gifts, and financial support are indicia of `interest, concern or responsibility' for the welfare of the child." In re Migdalia,6 Conn. App. 194, 208-209, cert. denied, 199 Conn. 309 (1986). "Conversely, where a parent fails to visit a child, fails to display any level of affection for the child, has no personal interaction with the child, and no concern for the child's welfare, statutory abandonment has occurred." Id. at 209.
There are five commonly understood general obligations of parenthood: "(1) express love and affection for the child: (2) express personal concern over the health, education and general well-being of the child; (3) the duty to supply the necessary food, clothing, and medical care; (4) the duty to provide an adequate domicile; and (5) the duty to furnish social and religious guidance." Id. CT Page 8073
"Abandonment focuses on the parent's conduct." In re Juvenile Appeal,183 Conn. 11, 14 (1981). As of the relevant adjudicatory date, Gladys had not visited with her children in almost a year. She had not inquired as to the children's welfare and had not maintained contact with the children through cards and letters. She had not provided any financial assistance or social or religious guidance. For all of these reasons, the court finds by clear and convincing evidence, that Gladys has abandoned Jennifer and Sandra within the meaning of the statute.
With regard to Jose C., he has never had any contact with Sandra and has not inquired as to her well-being. Sandra was seven years old as of the relevant adjudicatory date. Accordingly, the court finds by clear and convincing evidence that Jose C. has abandoned this child within the meaning of the statute.
NO ONGOING PARENT/CHILD RELATIONSHIP
The petitioner alleges that Jose C. has no ongoing parent/child relationship with his child that ordinarily develops as the result of the parent having met on a day-to-day basis, the physical, emotional, moral and educational needs of the child and to allow further time for the establishment or reestablishment of such a parent/child relationship would be detrimental to the best interest of the child. Conn. Gen. Stat.
§ 17a-112 (c)(3)(D). The Connecticut Supreme Court in In re Jessica M., 217 Conn. 459 (1991) found that termination on these grounds is inappropriate unless "the child has no present memories or feelings for the natural parent" or that if such child does have some memories, "no positive emotional aspects of their relationship survive." Id. at 468.
"In determining whether there is no ongoing parent-child relationship the court should consider the feelings of the child towards the parent especially if those feelings are positive rather than negative." In reMegan M., 24 Conn. App. 338, 341 (1991). Sandra has never met her father and therefore has no memories of him. Additionally, it would be both detrimental and futile to the best interest of Sandra to allow further time for the establishment of a relationship with her father. He has never indicated any interest in being a part of her life.
The court finds by clear and convincing evidence that there is no ongoing parent/child relationship between Jose C. and Sandra.
MANDATORY FINDINGS
With respect to Gladys H. and Jose C., as required by Conn. Gen. Stat.
§ 17a-112 (d), the court makes the following findings: CT Page 8074
1. The timely nature and extent of services offered, provided and made available to the parent and child by an agency to facilitate the reunion of the child with the parent.
Gladys H. was offered timely and appropriate services including multiple opportunities to take part in substance abuse programs.
Jose C. has never appeared in this case or contacted DCF and therefore DCF did not have the opportunity to offer this father services.
2. Whether DCF has made reasonable efforts to reunite the family pursuant to the federal Adoption Assistance Child Welfare Act of 1980.
DCF has made reasonable efforts to reunite the family. With regard to Gladys H., DCF referred mother to multiple substance abuse programs which she either did not benefit from or did not attend. Gladys also failed to visit with her children since 1998 despite having the opportunity to have weekly visitation.
Jose C. has never appeared in this case or contacted DCF despite reasonable efforts by DCF to locate him.
3. The terms of any applicable court order entered into and agreed to by any individual or agency and the parent, and the extent to which all parties have fulfilled their obligations under such order.
Gladys H. was provided with steps which, for the most part, she failed to comply with. She did not comply with or benefit from the substance abuse programs that she was referred to. She has not kept her whereabouts known to DCF and she has failed to visit with her children for over two years. She also has a lengthy conviction record and has been in violation of probation.
Jose C. was never provided with steps because he has never appeared in this case.
4. The feelings and emotional ties of the child with respect to his parents, any guardian and any person who has exercised physical care, custody or control of the child for at least one year and with whom the child has developed significant emotional ties.
The foster mother is the psychological parent of Jennifer and Sandra. They do not have a positive emotional relationship with their biological mother. Sandra has no emotional tie with her father. CT Page 8075
5. The age of the child.
Jennifer is nine years old. Sandra is nine years old.
6. The efforts the parent has made to adjust his circumstances or conditions to make it in the best interest of the child to return him to his home in the foreseeable future, including, and not limited to, (A) the extent to which the parent has maintained contact with the child as part of an effort to reunite the child with the parent, provided the court may give weight to incidental visitations, communications or contributions and, (B) the maintenance of regular contact or communication with the guardian or other custodian of the child.
Gladys H. has not made an effort to adjust her circumstances to make it in the best interest of the children to return them to her home. She is currently whereabouts unknown and has not visited with her children in over two years.
Jose C. has not made any effort to be a parent to Sandra.
7. The extent to which a parent has been prevented from maintaining a relationship with the child by the unreasonable act or conduct of the other parent of the child or the unreasonable act of any other person, or by economic circumstances of the parent.
Gladys H. has not been prevented by the unreasonable act of anyone from maintaining a relationship with her children.
Jose C. has not been prevented by the unreasonable act of anyone from maintaining a relationship with his daughter.
DISPOSITION
In the dispositional phase of a termination case, the court must consider whether DCF has proven by clear and convincing evidence that "termination is in the best interest of the child." Conn. Gen. Stat.
§ 17a-112 (c)(2). The court can consider all events occurring through the close of the dispositional hearing. Connecticut Practice Book 33-5.
"It is undisputed that children require secure, stable, long-term, continuous relationships with their parents or foster parents. There is little that can be as detrimental to a child's sound development as uncertainty over whether he is to remain in his current `home,' under the care of his parents or foster parents, especially when such uncertainty is prolonged." Lehman v. Lycoming County Children's Services, supra,458 U.S. 502, 513 (1982). CT Page 8076
Sandra and Jennifer have been in foster care for over four years. They have been placed together for the last two years. Their mother has not visited with them in over two years and Sandra's father has never come forward as a parent for this child. Neither parent appeared for trial. These children need and deserve permanency.
The court finds by clear and convincing evidence that it is in the best interest of Jennifer and Sandra that the parental rights of Gladys H. and Jose C. be terminated. Accordingly, a termination of the parental rights of Gladys H., with regard to Jennifer and Sandra, and Jose C., with regard to Sandra, is ordered.
It is further ordered that the Commissioner of DCF be appointed statutory parent for Sandra for the purpose of securing an adoptive home. The Commissioner shall file with this court, no later than 60 days following the date of judgment, a written report of efforts to effect such permanent placement and file further reports as are required by state and federal law.
 CHASE T. ROGERS JUDGE OF THE SUPERIOR COURT