IN RE SHEILA J.*
(AC 20625)

Foti, Mihalakos and Healey, Js.

Argued January 17—officially released March 27, 2001

* In accordance with the spirit and intent of General Statutes § 46b-142 (b) and Practice Book § 79-3, the names of the parties involved in this appeal are not disclosed. The records and papers of this case shall be open for inspection only to persons having a proper interest therein and upon order of the Appellate Court.

*Roger E. Bunker*, for the appellant (respondent mother).

*Jessica B. Gauvin*, assistant attorney general, with whom were *Benjamin Zivyon*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, and *Susan T. Pearlman*, assistant attorney general, for the appellee (petitioner).

*Carol A. Veroczi*, for the minor child.

*Opinion*

FOTI, J. The respondent mother[1] appeals from the judgment rendered by the trial court terminating her parental rights in her minor daughter, S. On appeal, the respondent claims that the court improperly (1) found that the department of children and families (department) made reasonable efforts to reunite her with S, (2) found that the respondent had failed to achieve sufficient personal rehabilitation and (3) considered in the adjudication phase of the proceedings events that

---

[1] The commissioner filed petitions to terminate the respondent mother's parental rights with respect to two children and the parental rights of the fathers of those children. A consolidated trial followed on November 15, and December 6, 7 and 10, 1999. The court granted both petitions. Only the respondent mother has appealed, and her appeal challenges only the judgment terminating her parental rights as to her daughter, S. We refer in this opinion to the respondent mother as the respondent.

occurred after the commissioner of children and families (commissioner) filed the petition to terminate her parental rights. We affirm the judgment of the trial court.

The following facts and procedural history are relevant to this appeal. On December 11, 1998, the commissioner filed a petition to terminate the respondent's parental rights with respect to S on the grounds that the respondent had failed to achieve sufficient personal rehabilitation and that no ongoing parent-child relationship existed between her and S.[2]

The respondent, who was twenty-six years old at the time of trial, was born in Puerto Rico but attended secondary school, through the eleventh grade, in Connecticut. She subsequently returned to Puerto Rico, where in 1990 she gave birth to a daughter through a nonmarital relationship. In 1993 and 1994, she gave birth to two more daughters through another nonmarital relationship with an individual who physically abused her during their relationship.

She and that individual returned to Connecticut and had a son in May, 1995. In July, 1995, the respondent was kicked in the abdomen during a gang-related fight and tested positive for cocaine use at that time. The department first became involved with the family in August, 1995, when their son required emergency hospital treatment for an injury caused by a dog bite. In October, 1995, the department received confirmed referrals alleging that the respondent's household was not clean, that the respondent had not properly fed the children, and that she and several teenagers had smoked marijuana around the house.

---

[2] At the close of the commissioner's case, the commissioner withdrew, and the court dismissed, the statutory ground for the termination of parental rights that no ongoing parent-child relationship existed between the respondent and S.

The respondent's son went to live with a close friend of the family in November, 1995. The respondent began a relationship with a third individual and was referred to a family preservation program. The respondent's boyfriend also was referred to a drug evaluation program, but neither the respondent nor her boyfriend followed through with those programs. The respondent failed to visit her son or express interest in his well-being. In May, 1996, she was the victim of domestic violence perpetrated by her boyfriend. On several occasions, she left the children unattended. As a result of those incidents, the department obtained an order of temporary custody and placed the respondent's four children in foster care.

In the late summer of 1996, the respondent's boyfriend went to prison and was ultimately sentenced for a series of narcotics-related offenses. The court adjudicated the four children neglected on October 4, 1996. On October 15, 1996, during the boyfriend's incarceration, the respondent gave birth to a fourth daughter, S. Both the respondent and S tested positive for the presence of cocaine at that time. On that basis, the department obtained an order of temporary custody for S and placed her in the same foster family with the two middle daughters. The court adjudicated S neglected on January 16, 1997, entered expectations for the respondent to follow and committed all five children to the department's custody for one year. The respondent's son returned to the custody of a family friend who had become a licensed foster mother.

The department referred the respondent to parenting classes, domestic violence counseling and drug evaluations in 1997, but she failed to participate meaningfully in those programs. She denied the need for domestic violence counseling. She used cocaine occasionally through December, 1997, and began a relationship with the father of her oldest daughter. On December 8, 1997,

the respondent gave birth to her sixth child, another son.

In January, 1998, the respondent tested negative at a drug evaluation. She enrolled in a drug treatment and life skills program in April, 1998, and completed it in December, 1998, testing negative for drugs throughout the program. The respondent also began attending parenting skills classes in January and completed those classes in July, 1998. She thereafter voluntarily attended parenting classes.

The father of the respondent's oldest daughter and second son physically abused the respondent, culminating in his arrest for an assault in July, 1998. The court sentenced him to two years imprisonment for domestic assault, possession of narcotics and violation of probation. The respondent also had an encounter with the father of her middle two daughters and her oldest son in September, 1998, in which he threatened her. The department referred the respondent to the Salvation Army domestic violence program. Although the respondent attended that program, she did not see the need for such counseling. Counselors in the program ultimately concluded that they could not help her. At the time of trial, she had recently enrolled in another domestic violence program.

The department offered her weekly visitation with her children. She inconsistently attended those visits. The respondent, who gave birth to another boy in March, 1999, demonstrated difficulty handling all of the children together. Her oldest son was particularly aggressive and did not pay attention to the respondent. She did not set limits for him and admitted that she could not control him. In June, 1999, the department removed him from the group visits and established separate visits for the respondent with him. As a result, he was quieter and followed directions better.

The respondent's oldest son remains a difficult child with speech and language delays, and attention deficit disorder. He attends an early intervention special education program. The respondent has not inquired about his need for special programs, and the child is not emotionally attached to either his natural mother or father. Instead, he has an emotional bond with his foster mother, whom he calls "Ma."

S has lived her entire life with her foster parents and two of her sisters. She is well-adjusted. At a visit in October, 1998, the respondent did not recall that it was S's birthday. After separating the oldest son from the rest of the family, the department increased the respondent's visits with the girls to three hours per week. S reluctantly attended some visits. During those visits, S identified the respondent as "Mommy," but behaved in a reserved manner toward her. S appears interested in getting to know her mother, but is far more comfortable and attached to her sisters and to her foster parents, and her foster parents would like to adopt her.

The respondent demonstrates more affection with the three older girls. The oldest girl, who has lived in separate foster homes from her sisters, receives therapy for behavioral problems. Her emotional attachment to the respondent is strong, and she has stated that she wants to return to the respondent's care. The department currently plans to reunite her with the respondent. If reunification efforts succeed, the department would then seek to reunify the respondent with her middle two daughters, who also have positive memories of the respondent.

To facilitate that possible reunion and because of concerns stemming from a May, 1999 psychological evaluation that diagnosed the respondent as depressed, the department referred the respondent to a family reunification program. The respondent has been living

in a studio apartment for more than one year with her second son. For a period of time, he was under department protective supervision, but the department has now removed that supervision. The child appears to be clean, well fed and well clothed, but the family needs a larger living space, which the respondent and her social workers have attempted to find. As of October, 1999, the respondent began working, but she lacks any significant work history. The respondent forswears an interest in having more children. She has stated that she will not resume any of her prior relationships and that she prefers to be single. In testimony at trial, however, she denied that an incident of domestic violence with the father of her oldest daughter and second son occurred in July, 1998.

Following four days of trial, the court found that the department had proved by clear and convincing evidence that it had made reasonable efforts to reunify the respondent and S, and that the respondent had failed to achieve sufficient personal rehabilitation for purposes of General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), as amended by Public Acts 1998, No. 98-241, § 8, now (j) (3) (B). The court concluded that it was in S's best interest that the respondent's parental rights in S be terminated.[3] This appeal followed.

Our standard of review on appeal from a termination of parental rights is whether the challenged findings are clearly erroneous. *In re Christina V.*, 38 Conn. App. 214, 223, 660 A.2d 863 (1995). "The determinations reached by the trial court that the evidence is clear and convincing will be disturbed only if [any challenged] finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous.

---

[3] The court also terminated the respondent's parental rights with respect to her oldest son. The respondent on January 14, 2000, filed her appeal from the judgment. The respondent did not brief any issues relating to her son, and we consider, therefore, the appeal only as to S.

*Pandolphe's Auto Parts, Inc.* v. *Manchester*, 181 Conn. 217, 221–22, 435 A.2d 24 (1980). *In re Juvenile Appeal (84-3)*, 1 Conn. App. 463, 478, 473 A.2d 795, cert. denied, 193 Conn. 802, 474 A.2d 1259 (1984). *In re Luis C.*, [210 Conn. 157, 166, 554 A.2d 722 (1989)].

"On appeal, our function is to determine whether the trial court's conclusion was legally correct and factually supported. *In re Michael M.*, [29 Conn. App. 112, 121, 614 A.2d 832 (1992)]; *In re Megan M.*, 24 Conn. App. 338, 342, 588 A.2d 239 (1991); *In re Davon M.*, 16 Conn. App. 693, 696, 548 A.2d 1350 (1988). We do not examine the record to determine whether the trier of fact could have reached a conclusion other than the one reached; *Pandolphe's Auto Parts, Inc.* v. *Manchester*, [supra, 181 Conn. 222]; nor do we retry the case or pass upon the credibility of the witnesses. *In re Christine F.*, 6 Conn. App. 360, 366–67, 505 A.2d 734, cert. denied, 199 Conn. 808, 809, 508 A.2d 769, 770 (1986). Rather, on review by this court every reasonable presumption is made in favor of the trial court's ruling. *State* v. *Jones*, 205 Conn. 638, 660, 534 A.2d 1199 (1987). *In re Kezia M.*, 33 Conn. App. 12, [17], 632 A.2d 1122, cert. denied, 228 Conn. 915, 636 A.2d 847 (1993); *In re Felicia D.*, 35 Conn. App. 490, 499, 646 A.2d 862, cert. denied, 231 Conn. 931, 649 A.2d 253 (1994). . . . *In re Eden F.*, 48 Conn. App. 290, 309, 710 A.2d 771 [(1998), rev'd on other grounds, 250 Conn. 674, 741 A.2d 873 (1999)].

"A hearing on a petition to terminate parental rights consists of two phases, adjudication and disposition. *In re Tabitha P.*, 39 Conn. App. 353, 360, 664 A.2d 1168 (1995). In the adjudicatory phase, the trial court determines whether one of the statutory grounds for termination of parental rights exists by clear and convincing evidence. If the trial court determines that a statutory ground for termination exists, it proceeds to the dispositional phase. In the dispositional phase, the trial court determines whether termination is in the

best interest of the child. Id." (Internal quotation marks omitted.) *In re Roshawn R.*, 51 Conn. App. 44, 51–52, 720 A.2d 1112 (1998).

I

The respondent first claims that the court improperly concluded that the department made reasonable efforts at reunification. We disagree.

Before a court may grant a petition to terminate parental rights on the basis of a parent's failure to achieve sufficient personal rehabilitation, the court must find by clear and convincing evidence that the department has made reasonable efforts to reunite the child with the parent. General Statutes (Rev. to 1997) § 17a-112 (c) (1), now (j) (1).[4]

"The term reasonable efforts was recently addressed by this court: Turning to the statutory scheme encompassing the termination of the parental rights of a child committed to the department, the statute imposes on the department the duty, inter alia, to make reasonable efforts to reunite the child or children with the parents. The word reasonable is the linchpin on which the department's efforts in a particular set of circumstances are to be adjudged, using the clear and convincing standard of proof. Neither the word reasonable nor the word efforts is, however, defined by our legislature or by the federal act from which the requirement was drawn. . . . [R]easonable efforts means doing everything reasonable, not everything possible. . . . *In re Tabitha T.*, 51 Conn. App. 595, 600, 722 A.2d 1232 (1999)." (Internal quotation marks omitted.) *In re*

---

[4] General Statutes (Rev. to 1997) § 17a-112 (c) (1), now (j) (1), provides that a court may grant the petition if it finds that the department "has made reasonable efforts to locate the parent and to reunify the child with the parent, unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts . . . ."

*Antony B.*, 54 Conn. App. 463, 474–75, 735 A.2d 893 (1999).

The court found that "[o]ver a period of more than three years, [the department] offered the mother substance abuse evaluation and treatment, parenting skill classes, domestic violence counseling, a family reunification program, a psychological evaluation and visitation." The department offered her access to those services prior to the removal of the children in 1995. She failed to avail herself of or participate meaningfully in those services. Following the removal of her children, the respondent failed to attend many visits with them. When she did attend, she rarely interacted with them, showed more affection toward her older daughters than to S and even forgot S's birthday on one visit. She denied the fact that she needed to participate in domestic violence counseling. Our review of the record discloses that the evidence supports the court's findings and its conclusion that the department repeatedly offered the respondent access to services, and that she consistently refused to participate or follow through with department recommendations. We cannot characterize the court's finding, regarding the department's reasonable efforts to reunify the respondent and S, as either legally incorrect or not factually supported.

## II

The respondent next claims that the court improperly terminated her parental rights on the ground of failure to achieve sufficient personal rehabilitation. We disagree.

Failure of a parent to achieve sufficient personal rehabilitation is one of six statutory grounds on which a court may terminate parental rights pursuant to § 17a-112. General Statutes (Rev. to 1997) § 17a-112 (c) (3) (B), as amended by Public Acts 1998, No. 98-241, § 8, now (j) (3) (B). That ground exists when a parent of a

child whom the court has found to be neglected fails to achieve such a degree of rehabilitation as would encourage the belief that within a reasonable time, considering the age and needs of the child, the parent could assume a responsible position in the life of that child.

"Personal rehabilitation as used in the statute refers to the restoration of a parent to his or her former constructive and useful role as a parent. . . . [Section 17a-112] requires the trial court to analyze the [parent's] rehabilitative status as it relates to the needs of the particular child, and further, that such rehabilitation must be foreseeable within a reasonable time. . . . [The statute] requires the court to find, by clear and convincing evidence, that the level of rehabilitation [he] has achieved, if any, falls short of that which would reasonably encourage a belief that at some future date [he] can assume a responsible position in [his] child's life. . . . In re Eden F., [250 Conn. 674, 706, 741 A.2d 873 (1999)]. This court recently explained that in assessing rehabilitation, the critical issue is not whether the parent has improved [his] ability to manage [his] own life, but rather whether [he] has gained the ability to care for the particular needs of the child at issue. . . . In re Shyliesh H., [56 Conn. App. 167, 180, 743 A.2d 165 (1999)]." (Internal quotation marks omitted.) In re Sarah Ann K., 57 Conn. App. 441, 448, 749 A.2d 77 (2000). A court's determination "that the evidence is clear and convincing that the parent has not rehabilitated herself will be disturbed only if that finding is not supported by the evidence and [is], in light of the evidence in the whole record, clearly erroneous." (Internal quotation marks omitted.) In re Tabitha T., supra, 51 Conn. App. 602–603.

The court considered the fact that the respondent had made some progress in recovering from drug abuse and in improving her parenting skills, and also that she "ultimately" attended domestic violence counseling

during the adjudicatory period, although she did not see the need for it or benefit from it. The court recognized and acted on her claim of "depression." In effect, however, the court determined that although the respondent demonstrated some efforts and had taken some steps toward rehabilitation, those efforts were too little and too late. Despite all the counseling she received, her choice of partners remained poor, and she did not maintain income or housing adequate for more than the one child already living with her. She sporadically attended visits with S and showed little affection for S, even failing to recognize S's birthday on one visit. The court aptly characterized the respondent's relationship with S as "limited."

While we note that the court recognized that the respondent could care for another older child and that the department bore the burden of proving that she lacked the ability to assume a responsible position in S's life within a reasonable time, it is clear that the court considered many factors in ultimately concluding that she failed to achieve sufficient personal rehabilitation. The respondent refused to follow through on department recommendations regarding individual domestic violence counseling, failing to accept or recognize her need for such counseling. She failed to participate meaningfully in drug screening and evaluation, failed to maintain adequate housing,[5] refused to participate in parenting classes after the birth of her sixth child in 1997, and failed to visit consistently and meaningfully with S.

Although the respondent may have achieved a level of stability within her limitations, we cannot conclude that the court's finding that she had failed to achieve

---

[5] The record does not disclose that the parties presented to the court the issue of whether poverty caused the respondent's "failure to maintain adequate housing"; being poor alone can never be a justification or a cause for termination of parental rights.

sufficient personal rehabilitation, as related to the needs of S, was clearly erroneous.

## III

Finally, the respondent claims that the court improperly considered in the adjudication phase of the trial events that occurred subsequent to the filing of the termination petition. We disagree.

During the adjudication phase, the court is limited to considering "events preceding the filing of the petition . . . ." Practice Book § 33-3 (a). The commissioner filed the petition on December 11, 1998. The respondent in her principal brief alleges that "the trial court must have improperly relied upon events which occurred after the adjudicatory date to reach its conclusion concerning respondent's housing and income." She bases that assumption on the fact that the court's memorandum of decision refers to "two children" living with her when it discussed her ability to maintain adequate housing, when actually only one child, born on December 8, 1997,[6] lived with her prior to the adjudication phase of the proceedings. That claim is without merit, as the factual correctness and legal soundness of the court's judgment is not affected by this inadvertent error.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[6] At the time the commissioner filed the petition, the respondent was pregnant with her seventh child, who was born in March, 1999.