Memorandum of Decision
On July 24, 2001, The Department of Children and Families (hereinafter DCF or petitioner) filed a petition to terminate the parental rights of Katia M. and John Doe to their child Jeisean M., born December 1999. Katia M. was served in hand with a copy of the petition on September 25, 2001 and has appeared in court and has been represented by counsel throughout these proceedings. Service to John Doe was made through publication and a default judgement was entered against him on August 23, 2001 by the court, Swienton, J.
The mother Katia M. (hereinafter, the respondent) opposed the CT Page 1922 termination of her parental rights. The statutory ground alleged in the petition for termination of parental rights was that Jeisean in a prior proceeding was found to have been neglected or uncared for and the mother has failed to achieve such a degree of personal rehabilitation as would encourage the belief that within a reasonable time, considering the age and the needs of the child, she could assume a responsible position in the life of the child. C.G.S. 17a-l 12(j)(3)(B). The matter was tried to the court on November 26, 2001 and December 13, 2001. The respondent appeared at the trial and was represented by an attorney. Also, present was counsel for the Petitioner and counsel for the minor child. All counsel participated fully in the examination of witnesses, and in the presentation of closing arguments. The petitioner called three witnesses: Wanda Milledge, Elisa Warga and Catherine Carabba. The respondent called Donna Heap, Wanda Correra, Miriam Rodriguez and testified herself Catherine Carraba was also called as a witness by the child's attorney. The petitioner introduced three exhibits consisting of records from Catholic Family Services, The Institute of Hispanic Families and The Alcohol and Drug Recovery Center (ADRC). The respondent introduced exhibits consisting of receipts from Greyhound Lines, receipts for parenting classes, a pay stub, a substance abuse client status report from Gandarra Mental Health Center, and a certificate of completion from the West. Springfield Counseling Center. The court also took judicial notice of the following facts: that on March 24, 2000 an Order of Temporary Custody was sustained when the respondent failed to appear, that on June 20, 2000 an adjudication of neglect was entered by agreement of the parties, that Specific Steps were entered by the court on June 20, 2000, and that a finding was made on May 17, 2001 that continued efforts toward reunification with the mother were no longer appropriate.
The court finds that it has proper jurisdiction of the matter, and that there are no pending actions affecting the custody of the minor child. The court has carefully considered the petition, all of the evidence and testimony presented, and the arguments of counsel, according to the standards required by law. On the basis of the evidence presented and for the reasons stated below, the court finds in favor of the petitioner and hereby terminates the parental rights of the respondent.
 FACTS
The court finds the following facts to have been proven by clear and convincing evidence:
Jeisean M. was born on December 999 and is now two years old. He is the respondent's only child. On March 17, 2000 an Order of Temporary Custody was granted on behalf of the child. This followed a 96-hour hold that had been invoked on March 15, 2000. Wanda Milledge a DCF investigator had CT Page 1923 been dispatched to the home of the respondent's aunt after a call had been received on the Department's Hotline. The aunt stated that Jeisean was congested and was having difficulty breathing. The aunt indicated she was unable to bring Jeisean to the hospital and did not know where the respondent was. The child was treated at the hospital for a double ear infection and congestion. Subsequent investigation disclosed that the child had been left by the respondent with her aunt on March 14, 2000 when the respondent went to the store, where she ran into friends, and returned to their residence. Upon returning to the friend's residence she ingested a quantity of Ecstasy, an illegal substance which, in her words, caused her "to pass out." In a conversation with Ms. Milledge on the 15th, the respondent had stated she had taken "acid" and Ecstasy on March 12th and smoked marijuana on March 14th. The respondent also told Ms. Milledge that her "head was not straight" due to the drugs she had consumed.
Jeisean was placed in an emergency foster care. On March 24, 2000 an Order of Temporary Custody was sustained when the respondent failed to appear. Jeisean was placed in a licensed foster care home on April 14, 2000 where he has remained throughout the pendency of this action and appears to be well adjusted and happy. There are two other young children in the home. He calls his foster parents "mommy and poppy". Both the foster mother and father have expressed a desire to adopt Jeisean.
On June 20, 2000, the child was adjudicated to have been neglected on the grounds that he was uncared for and required specialized care. The respondent entered a plea of nolo contendre. The court approved Specific Steps that had been previously signed by the respondent and made them court orders.
Those steps relevant to the issues here included an obligation to keep all appointments set by DCF, to participate in counseling toward certified treatment goals in parenting and individual counseling, submit to substance abuse assessment and follow recommendations for treatment, submit to random drug testing, secure and maintain adequate housing and income, visit the child as permitted, and no substance abuse. The purpose of these steps was to facilitate the reunification of mother with child.
In order to assist the respondent in rehabilitation efforts, the petitioner provided Katia with an intern for intensive case management and home support services commencing on April 16, 2000.The intern was to provide Katia with assistance and encouragement in meeting with service providers. These services were intended to last three to four months. The respondent missed several appointments which she failed to reschedule. The respondent failed to take advantage of the assistance the petitioner offered. CT Page 1924
The social worker assigned to Katia, Elisa Warga, also made several referrals on behalf of the respondent for treatment and counseling. Specifically referrals were made to Catholic Family Services, The Institute for Hispanic Families, and the Alcohol Drug Recovery Center (ADRC).
The court received into evidence (exhibit 1) reports from Catholic Family Services. Those reports indicate that the respondent tested positive for marijuana on three occasions: June 2, June 9and August 28 of the year 2000.The respondent missed four of the ten sessions. The program, in its discharge summary felt that Katia was in need of a more intensive program and that there had been no change in her symptoms or status. The report also stated that Katia had put forth minimal effort into her treatment and recovery. When confronted by Ms. Warga with this report, the respondent became angry, cursing at the worker, accused the service provider of lying and indicated she was not going to listen to the worker any further. The worker testified that throughout her association with the case, from March of 2000 through September of 2001, she repeatedly advised Katia of the need to cooperate with the services being provided to her if she hoped to be reunited with her child.
On October 11, 2000, Ms. Warga referred the respondent to another program, The Institute for Hispanic Families. The discharge summary from that program (exhibit 2) indicated that the respondent's case was closed for noncompliance. In addition to testing positive for marijuana and phencyclidine, the respondent also failed to attend several counseling sessions despite efforts by the program and the social worker to get her there. The discharge summary indicated that there was no change in status or symptoms and that the respondent continued to be in need of treatment.
The final referral was made on behalf of the respondent after a finding by the court (Swienton, J.) that further efforts towards reunification were no longer appropriate. On June 11, 2000, Ms. Warga referred Katia to ADRC for treatment. The respondent rendered a urine specimen which tested positive for marijuana on that date. Katia never attended that program, indicating that it was too far from her current residence in Springfield Mass. The respondent stated she planned to get treatment in Springfield but has failed to furnish any proof of treatment that occurred prior to the filing of the termination proceeding.
The respondent introduced evidence to indicate that she had completed a parenting class in Springfield (exhibit E). Donna Heap, a coordinator at the Family preservation Program at Child and Family Services of Pioneer Valley testified that Katia attended a ten session parenting class during CT Page 1925 the fall of 2001 and received certificate of completion. Katia was an active participant in the course which focused on parenting skills and subjects relevant to the parenting of a child under twelve.
A report from Gandara Mental Health Center Substance Abuse Program (exhibit D) relative to the respondent's substance abuse treatment in Springfield. verified Katia's testimony that she had initiated treatment. The report indicates that Katia tested negative for any illegal substance and had attended an individual counseling session on December 7, 2001. The report indicates that the respondent missed a session on December 3rd. The report also contains admissions attributed to the respondent which raise issues as to her consistency and credibility regarding the extent of her drug problem. On page 3 of the report, the respondent states that she had used Ecstasy two times. This is inconsistent with her testimony that she had used Ecstasy only once. She also fails to disclose her use of phencyclidine (PCP) which was testified to as being an animal tranquilizer.
She also claims to have been sober for two years which is inconsistent with all the evidence that has been introduced relative to her substance abuse.
The report from Gandarra also addresses psychological and emotional concerns of the respondent. There are references to depression, What is more disturbing to the court however are admissions by Katia regarding hallucinations such as people talking and seeing shadows.
The respondent was also ordered by the court to keep DCF informed as to her whereabouts. The respondent failed to comply with that step. At times Katia informed her worker that she was residing with her father in New Britain. At some point she moved in with a partner in Hartford but failed to inform her worker. She subsequently told Ms. Warga that she had returned to live with her father but unannounced visits disclosed she was not residing there. Prior to the filing of the termination, Katia did not furnish any proof that she maintained her own apartment. Currently she is residing with a partner, Miriam R. in Springfield but has not demonstrated an ability to live independently.
Another step ordered by the court was that the respondent secure and maintain adequate income. The only evidence introduced regarding the respondent's employment was that she was employed for a short time at McDonald's around March and April of 2000. She left there due to what she termed harassment by her boss. There was some reference to working at Filenes but that was never substantiated. Katia did obtain employment subsequent to the filing of the petition. She is currently employed at Springfield College in the cafeteria on a part time basis (exhibit C). CT Page 1926
The court ordered that the respondent visit the child as often as the Department permits. Weekly visits were set up for Katia to visit with Jeisean. During the year 2000 it appears that visitation was conducted on a regular basis. During March of 2001, the respondent's compliance became sporadic. Katia missed scheduled appointments on March 1, March 8, March 20, and on April 10. Apparently the respondent did not contact the worker to explain her absence on those dates unlike the missed appointment on May 3rd, when she called to indicate she was without transportation. The respondent testified that she was in a car accident sometime in March and was undergoing therapy in Springfield but did not begin staying in Springfield on a regular basis until sometime in April. She did not show how that prevented her from visiting or at least calling to explain her absences The respondent also failed to show on August 9th and August 23rd, The respondent did testify that transportation was a problem due to her living in Springfield and introduced receipts for bus tickets (exhibit A) to show her efforts to keep her visits with Jeisean. Testimony indicated that the respondent was generally accompanied by someone when making the visits. It is clear that Jeisean acknowledges the respondent as his mother. It is also evident that Katia conducted herself appropriately during these visits, showing affection and proper interaction.
 Adjudicatory Findings 1. Efforts to reunify
In order to terminate parental rights, DCF must show by clear and convincing evidence that "it has made reasonable efforts to locate the parent and reunify the child with the parent unless the court finds in this proceeding that the parent is unable or unwilling to benefit from reunification efforts providing that this finding is not required if the court has determined at a hearing that such efforts are not appropriate." C.G.S. 17a-112 (c)(l) Since the court Swienton, J did make such a finding on May 17, 2001 it is not necessary for the petitioner to make such a showing here with respect to the respondent mother.
With respect to the father John Doe, DCF was never able to learn his identity because the respondent mother was unable or unwilling to identify him. No one has come forward during the pendency of the case to claim paternity. Notice of this action was provided by publication and father failed to come forward. A default judgement was entered against John Doe on September 25, 2001. Based on these facts it is clear that the respondent father is unwilling to benefit from reunification efforts.
Statutory Grounds-Mother
CT Page 1927
In order to prevail on termination of parental rights, DCF must prove by clear and convincing evidence that one of several statutory grounds for termination exists. In this adjudicatory phase, the court is ordinarily limited to events preceding the filing of the petition or its latest amendment. Practice Book 33-3(a). The operative date here is July 24, 2001. In its petition, DCF alleges the ground of failure to rehabilitate. This statutory ground for termination arises "when the parent of a child who has been found by the Superior Court to have been neglected or uncared for in a prior proceeding . . . has failed to achieve such degree of personal rehabilitation as would encourage the belief that within a reasonable time considering the age and needs of the child such parent could assume a responsible position in the life of the child." C.G.S. 17a-112 (c)(3)(B). With respect to this statutory ground for termination of parental rights, the court finds that the petitioner has met its burden of proof, of clear and convincing evidence, and accordingly find this issue resolved in favor of the petitioner.
On June 20, 2000, the court, Swienton, J, found Jeisean to have been neglected thus satisfying the first statutory element. The rest of the statute requires the court to determine whether the facts encourage the belief that the parent could assume a responsible position in the child's life. This portion of the statute requires the court to analyze a parent's rehabilitation "as it relates to the needs of the particular child" and to determine whether such rehabilitation is foreseeable "within a reasonable time." In re Luis C., 210 Conn. 157, 167 (1989) In this adjudicatory phase "the critical issue is not whether the parent has improved her ability to manage her own life, but rather whether she has gained the ability to care for the particular needs of the child at issue." In re Sarah Ann K., 57 Conn. App. 441, 448 (2000).In making this determination the court may properly rely upon events occurring after the date of the petition when considering whether the degree of rehabilitation is sufficient to foresee that the parent may resume a useful role in the child's life within a reasonable time. In re StanleyD., 61 Conn. App. 224, 230 (2000).
Its clear from the evidence that, as of the date of the petition, the respondent had not achieved the degree of rehabilitation necessary to care for her child. She was given the services of an intern to provide additional support and she failed to take advantage of what appears to be an unusual step on the part of DCF. She was referred to three treatment and counseling programs and failed to successfully complete any of them. It does not appear that she obtained a steady job or a suitable place to live. The petitioner reminded Katia of the need to cooperate and its importance if she wished to be reunified with her son. She did not cooperate and in fact became hostile on one occasion. This lack of CT Page 1928 progress towards rehabilitation is underscored by the respondent's compliance with visitation. The respondent initially was very compliant with visitation. Then in March she became erratic and failed to explain her missed appointments or her failure to notify DCF that she would not be attending. It should be noted that at the end of February the respondent's drug screen reflected that she was using marijuana and phencyclidine.
The court can consider rehabilitative efforts subsequent to the filing of the petition in determining the issue as to whether the parent could assume a responsible position in the life of the child within a foreseeable period of time. In re Amber B. 56 Conn. App. 776. The respondent had not achieved any degree of rehabilitation as of the filing date. And while she has made some progress towards rehabilitation and addressing the issues it is not of such a degree that would allow this court to find that she could be a responsible parent within a foreseeable period of time. Evidence has been submitted that the respondent is now living in Springfield and employed. She has completed a parenting class though it was limited to classroom work only. She has not made any significant progress towards dealing with the substance abuse problem which the respondent has testified has been long standing issue in her life. She submitted evidence that she began a substance abuse program and tested negative for any substances but then she failed to keep her first appointment after her initial interview and appeared to be less than candid about the extent of her drug use. It's a case of too little too late. In re Sheila J., 62 Conn. App. 470 (2001). She cannot be an effective parent until the issue of substance abuse is laid to rest. She has started programs in the past but has failed to carry through. The respondent attributes much of her progress to her current relationship and partner. While it is commendable that she has made improvements in her ability to manage her own life it is not dispositive of the issue of her ability to care for Jeisean. In fact, the evidence shows that she is very dependent on her partner and has not demonstrated an independent ability to deal with her problems and care for a child.
The respondent has alluded to economic factors playing a role in her inability to rehabilitate herself She failed however to offer any evidence as to how her economic situation affected her rehabilitation. Money did not play a role in her failing to complete the various programs to which she was referred. She made no apparent efforts to obtain employment. She voluntarily relocated to Springfield which contributed to some of her problems in maintaining her visitation schedule.
The respondent has also asserted a claim that before this court can terminate her parental rights it must determine that the consequences in harm to the child in allowing the parent child relationship to continue CT Page 1929 are more severe than the consequences of termination. There was no evidence offered however as to any harm that would occur to Jeisean by termination. The court also finds that the criteria provided by 17a-112
C.G.S. are sufficient to protect a parent's interests in the termination of their parental rights. By providing for a higher burden of proof, namely, clear and convincing evidence, the statute meets the constitutional standards required by Santosky v. Kramer 455 U.S. 745
(1982). By holding the State to such a burden in the adjudicatory phase, the statute provides sufficient protection to the issue of family integrity and the respondent's rights in preserving same.
Statutory Grounds-Father
With respect to the father, John Doe, the petition alleges two ground on which to terminate his parental rights: abandonment and no ongoing parent-child relationship.
17a-112 (j)(A) C.G.S. requires proof that a child has been abandoned by a parent in the sense that the parent has failed to maintain a reasonable degree of interest, concern, or responsibility as to the welfare of the child. Since John Doe has never appeared in court and has never come forward to acknowledge his paternity of Jeisean, the court finds by clear and convincing evidence that John Doe has in fact abandoned the child and therefore finds for the petitioner on the grounds of abandonment.
17a-112 (j)(D) C.G.S. requires proof of no on going parent child relationship which means the relationship that ordinarily develops as a result of the parent meeting on a daily basis the physical, emotional, moral, emotional, or educational needs of the child and to allow further time for the establishment of such parent-child relationship would be detrimental to best interest of the child. As stated above, based on the facts contained in the file, John Doe has never come forward and has never played any role in his child's life. The court therefore finds that the petitioner has sustained its burden of proof of clear and convincing evidence and finds no ongoing parent-child relationship.
 DISPOSITION
The court has found by clear and convincing evidence that all the statutory grounds alleged by the petitioner for the termination of Katia M.'s parental rights have been proven. Before making a decision whether or not to terminate the respondent's parental rights the court must now consider and make findings on each of the seven criteria set forth in Sec. 17a-112 (k). In re Romance, M. 229 Conn. 345 (1994)
CT Page 1930
These criteria and the court's findings, which have been established by clear and convincing evidence are as follows:
1. The timeliness, nature, and extent of services offered or provided tofacilitate the reunion of child with parent.
The Department of Children and Families was immediately available to the respondent. They provided her with several opportunities for counseling, treatment and support which would have facilitated the mother's reunion with her child had she taken advantage of them. She was assigned an intern to encourage her and assist her in her rehabilitation efforts. Referrals were made for her to attend counseling at Catholic Family Services, The Institute for Hispanic Families, and ADRC. She failed to complete or take advantage of any of these referrals. Since the father's identity is unknown and no one came forward to acknowledge paternity, the petitioner was unable to offer any services to John Doe.
2. The terms of any applicable court order, and the extent to whichthe parties have fulfilled their obligations under the order.
Specific steps to facilitate the reunification were signed by the mother and made an order of the court on June 20, 2000.The respondent was ordered to obtain substance abuse treatment, not to abuse any substances, participate in parenting classes, secure and maintain adequate housing and income, and visit the child as often as DCF permits. The respondent failed to obtain the substance abuse treatment as ordered. DCF made referrals to three programs on her behalf and she failed to complete any one of them satisfactorily. She also tested positive for illegal drug use on several occasions. She participated in a substance abuse treatment evaluation subsequent to the filing of this petition and tested negative as to the presence of any illegal substances. She failed to participate in parenting classes prior to the filing of the petition but did furnish proof that she completed one after the petition was filed. Prior to the filing of the petition there was no evidence that she had maintained a job or secured adequate housing. She has since obtained a part time job and is sharing an apartment with a new partner. With respect to visitation it appears that the respondent was consistent during the first year Jeisean was committed to the petitioner. Problems began to arise in March of 2001. There were numerous no shows without explanation during this month. She also missed visits in August and failed to call to advise her worker that she would not be present. In September she missed two visits but did call to indicate a lack of transportation. She was always appropriate with the child during her visits.
Since father's identity was unknown and no one came forward to CT Page 1931 acknowledge paternity, no court orders were made.
3. Feelings and emotional ties of the child with respect to his parentsand any person who exercised physical care, custody and control of thechild for at least one year with whom the child has developed significantemotional ties.
Jeisean has been with the same foster family since placement in April of 2000.He appears to be at ease at the home which consists of two other foster children and the mother and father. He is bonded to the foster parents and calls them mommy and poppy. He also acknowledges one of the other children as a sibling. Jeisean also appears to love and acknowledge the respondent as his mother. He calls her mommy.
Since the father has never been identified and no one has come forward to acknowledge paternity there are no emotional ties between Jeisean and his father.
4. Age of the child.
Jeisean is currently two years old.
5. Parents efforts to adjust their circumstances to make it in the bestinterest of the child to return him to his home in the foreseeable future,including the extent of parental contact or communication the child'sguardian or custodian.
The respondent mother has made very little effort to adjust her circumstances to enable the petitioner to return her child to her. She has failed to follow through with the numerous treatment programs that were extended to her. She has made no apparent efforts to seek employment or maintain adequate housing. She began a relationship with a partner in Springfield Mass. That has brought some stability to her life in that she now has ajob and housing but at the same time the move created problems with respect to her visiting the child. Since the identity of the father is unknown and no one has come forward to acknowledge paternity it is clear that the respondent John Doe has made no effort to adjust his circumstances.
6. Extent to which the parents has been prevented from maintaining ameaningful relationship with the child by unreasonable acts of the child,other parent, or other person or economic circumstances.
Neither parent was prevented from maintaining a meaningful relationship with the child. In the case of the mother her ongoing substance abuse problem and her unwillingness initially to adjust her circumstances made CT Page 1932 maintaining a relationship difficult. Her voluntary move to Springfield later created difficulties for her in maintaining a regular visitation schedule. In the case of the father he simply chose not to exercise his right.
7. Whether the Department of Children and Families has made reasonableefforts to reunite the family pursuant to the federal Child Welfare Actof 1980.
The Department of Children and Families has made every reasonable effort to reunite this family
Best Interests
 17a-112 requires that this court find by clear and convincing evidence, that "termination is in the best interest of the child." That determination is made based on all the evidence existing up to and through the trial. In re Romance M., 30 Conn. App. 839 (1993)
In this case, Jeisean has been in the same foster home for over twenty of his twenty four months of life. He has bonded with his foster parent calling them mommy and poppy. It has been the only nurturing and stable home he has known. The foster parents have also expressed a willingness to adopt Jeisean.
As reflected by statute, 17a-11a, and case law, In re Juvenile Appeal189 Conn. 276 (1983), the need for permanency in these cases is critical. While there has been some signs of progress on the respondent's part it is not reasonable to delay a permanent placement for the child to see whether or not the respondent continues her rehabilitation efforts. While the respondent should be commended for her efforts which the this court hopes continue to bear fruit it cannot outweigh the child's best interest which in this case calls for termination of the parental rights. It is a case of too little too late. In re Alexander V.,25 Conn. App. 741 (1991), In Re Sheila. J., 62 Conn. App. 470 (2001).
The statutory parent for Jeisean shall be the Commissioner of the Department of Children and Families. A permanency plan shall be filed within thirty days of the filing date of this decision.
The court further finds that DCF has made reasonable efforts to effectuate the permanency plan.
Motion to Revoke Commitment
The motion to revoke the commitment is denied for the above stated CT Page 1933 reasons.